Mark D. Selwyn (SBN 244180)
mark.selwyn@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
Telephone: (650) 858-6031
Facsimile: (650) 858-6100

*Attorney for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

**FRESNO DIVISION**

| | |
|---|---|
| UNITED FARM WORKERS and UFW FOUNDATION,<br>Plaintiffs,<br>v.<br>THE UNITED STATES DEPARTMENT OF LABOR and MILTON AL STEWART, in his official capacity as Acting United States Secretary of Labor,<br>Defendants. | Case No. 1:20-cv-1690-DAD-JLT<br>**NOTICE OF MOTION TO ENFORCE COMPLIANCE WITH THE COURT'S PRELIMINARY INJUNCTION**<br>**ORAL ARGUMENT REQUESTED**<br>**SCHEDULING STIPULATION TO FOLLOW** |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that at the earliest practical date to be set by the Court, Plaintiffs United Farm Workers and UFW Foundation will and hereby do move to enforce compliance with the Court's preliminary injunction entered December 23, 2020, which enjoined Defendants United States Department of Labor and Acting United States Secretary of Labor Milton Al Stewart from implementing the final rule promulgated on November 5, 2020 and required Defendants to operate under the 2010 final rule as it pertains to calculating Adverse Effect Wage Rates (AEWRs) for non-range occupations in the H-2A programs. The Motion requests that the Court order Defendants to direct H-2A program employers to make wage adjustment payments to compensate qualifying farmworkers for the differences between wages paid and the geographically applicable 2021

AEWRs published by the Department of Labor on February 23, 2021. The total wage adjustment payments likely exceed $10 million.

Prior to filing this Motion, Plaintiffs have met and conferred with counsel for Defendants, who declined to grant Plaintiffs' request to direct H-2A program employers to make necessary wage adjustment payments.

This Motion is supported by such written or oral argument as may be presented at or before the time this motion is taken under submission by the Court. Mindful that effectively administering wage adjustment payments for H-2A workers and U.S. farmworkers grows more difficult with time, the parties have conferred in advance of this filing and have agreed, subject to the Court's approval, to an expedited briefing schedule. The parties have prepared a scheduling stipulation that Plaintiffs plan to file shortly after this motion has been docketed.

DATED: March 11, 2021

Respectfully submitted,

*/s/ Mark D. Selwyn*

Mark D. Selwyn (SBN 244180)
WILMER CUTLER PICKERING
HALE AND DORR LLP
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
Telephone: (650) 858-6031
Facsimile: (650) 858-6100
mark.selwyn@wilmerhale.com

*Attorney for Plaintiffs*

Mark Selwyn (SBN 244180)
mark.selwyn@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
2600 El Camino Real, Suite 400
Palo Alto, California 94306
Telephone: (650) 858-6031
Facsimile: (650) 858-6100

*Attorney for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
FRESNO DIVISION

UNITED FARM WORKERS and UFW FOUNDATION,

Plaintiffs,

v.

THE UNITED STATES DEPARTMENT OF LABOR and MILTON AL STEWART, in his official capacity as Acting United States Secretary of Labor,

Defendants.

**Case No.** 1:20-cv-01690-DAD-JLT

**PLAINTIFFS' MOTION TO ENFORCE COMPLIANCE WITH THE COURT'S PRELIMINARY INJUNCTION**

**Motion Date:** April 20, 2021
(Stipulation to shorten time to follow)

**ORAL ARGUMENT REQUESTED**

**TABLE OF CONTENTS**

INTRODUCTION ........ 1
ARGUMENT ........ 3
I. H-2A Workers And U.S. Farmworkers Are Entitled To Wage Adjustments ........ 3
II. DOL Can Administer Wage Adjustments ........ 7
III. The Court Has Authority To Order DOL To Direct H-2A Employers To Pay Farmworkers Wage Adjustments, And Prompt Action Is Required ........ 9
CONCLUSION ........ 12

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Democratic Central Committee of D.C. v. Washington Metropolitan Area Transit Commission*, 485 F.2d 786 (D.C. Cir. 1973) .......... 10

*Federick County Fruit Growers Ass'n, Inc. v. McLaughlin*, 703 F. Supp. 1021 (D.D.C. 1989) .......... 11

*Frederick Count Fruit Growers Ass'n, Inc. v. Martin*, 968 F.2d 1265 (D.C. Cir. 1992) .......... 2, 9, 10

*Joseph v. Dep't of Labor*, 787 F. Supp. 245 (D.D.C. 1991) .......... 11

*Montana Power Co. v. Federal Energy Regulatory Commission*, 599 F.2d 295 (9th Cir. 1979) .......... 10

*Morrison v. U.S. Dep't of Labor*, 713 F. Supp. 664 (S.D.N.Y. 1989) .......... 10, 11

*NAACP, Jefferson County Branch v. Donovan*, 566 F. Supp. 1202 (D.D.C. 1983) .......... 4, 6, 9, 11

*National Wildlife Federation v. National Marine Fisheries Service*, 524 F.3d 917 (9th Cir. 2008) .......... 9

*Paxton v. Secretary of Health & Human Services*, 856 F.2d 1352 (9th Cir. 1988) .......... 7

**Docketed Cases**

*United Farm Workers v. Dep't of Labor*, No. 1:20-cv-1690-DAD-JLT (E.D. Cal.) .......... *passim*

*United Farm Workers v. Perdue*, No. 1:20-cv-1452-DAD-JLT (E.D. Cal.) .......... *passim*

**Statutes & Codes**

8 U.S.C. § 1188(a)(1)(B) .......... 9

**Regulations**

20 C.F.R.
§ 655.120(b)(2) ....................4, 5
§ 655.120(c) ....................4, 5
§ 655.122(j) ....................8
§ 655.122(l) ....................4, 6
§ 655.153 ....................8
§ 655.156(a)(2) ....................8
§ 658.504(a)(2)(ii) ....................9

Employment and Training Administration, 84 Fed. Reg. 69,774 (Dec. 19, 2019) ....................3, 4

Employment and Training Administration, 86 Fed. Reg. 10,996 (Feb. 23, 2021) ....................3, 4

**Other Authorities**

Bureau of Labor Statistics, *Employment Cost Index – December 2020*, USDL-21-0126 (Jan. 29, 2021), https://www.bls.gov/news.release/pdf/eci.pdf ....................4

USDA Nat'l Agric. Statistics Serv. (NASS), *Farm Labor* (Feb. 11, 2021), https://release.nass.usda.gov/reports/fmla0221.pdf ....................1, 4

U.S. Dep't of Labor, Employment and Training Administration – Announcements (Jan. 15, 2021), https://www.dol.gov/agencies/eta/foreign-labor/news ....................6

U.S. Dep't of Labor, Employment and Training Administration – Performance Data – H-2A Disclosure Data FY2020, https://www.dol.gov/sites/dolgov/files/ETA/oflc/pdfs/H-2A_Disclosure_Data_FY2020.xlsx ....................7

U.S. Dep't of Labor, Employment and Training Administration – Performance Data – H-2A Disclosure Data FY2021 Q1, https://www.dol.gov/sites/dolgov/files/ETA/oflc/pdfs/H2A_Disclosure_Data_FY2021_Q1.xlsx ....................7

**INTRODUCTION**

Farmworkers in California and around the country have continued to put themselves at risk by working through the COVID-19 pandemic and the hazardous smoke from 2020's unprecedented western fire season. As the Court has recognized, this population of migrant farmworkers suffers from severe socioeconomic marginalization, and many of their families remain in poverty despite their tireless work in the fields. *See* ECF No. 27 at 28-30, 33-34.

On February 12, 2021, the U.S. Department of Agriculture (USDA) finally complied with the preliminary injunction entered by this Court in *United Farm Workers v. Perdue*, No. 1:20-cv-1452 (E.D. Cal. Oct. 28, 2020), Order, *United Farm Workers v. Dep't of Labor*, No. 1:20-cv-1690-DAD-JLT (E.D. Cal. Dec. 23, 2020) ECF No. 37 (PI Order), and published the Farm Labor Report (FLR) originally scheduled for November 2020.[1] The FLR confirmed that farmworkers wages have continued to increase significantly: the Farm Labor Survey (FLS) determined that the gross wage rate for field and livestock workers during the October 2020 reference week had increased six percent year-over-year.[2] Moreover, the annual average gross wage for field and livestock workers—the figure that determines the 2021 Adverse Effect Wage Rates (AEWRs) under the U.S. Department of Labor's (DOL) 2010 regulation—rose approximately five percent, to $14.62. Accordingly, on February 23, 2021, DOL published the 2021 AEWRs, as required by the Court's January 12, 2021 Supplemental Order. *See* Suppl. Order Regarding Prelim. Inj. Relief, *United Farm Workers v. Dep't of Labor*, No. 1:20-cv-1690-DAD-JLT (E.D. Cal. Dec. 23, 2020) ECF No. 39 (Suppl. Order).

The 2021 AEWRs' five percent average increase represents a substantial raise for H-2A workers and U.S. farmworkers in corresponding employment. However, the AEWRs grew even faster in some major agricultural states, such as California, where the 2021 AEWR is more than 8.5 percent higher than the 2020 AEWR. This wage growth is appropriate, considering the risks farmworkers have faced.

While the increase in the 2021 AEWRs is essential to farmworkers' economic security and required by law and court order, it came nearly two months late. That delay is solely due to the

---

[1] *See* USDA Nat'l Agric. Statistics Serv. (NASS), *Farm Labor* (Feb. 11, 2021), https://release.nass.usda.gov/reports/fmla0221.pdf (Feb. 11, 2021 Farm Labor Report).
[2] *See id.* at 1.

Government's maladministration of the H-2A program, followed by its delay in complying with this Court's injunctions. *See* PI Order at 34. As the Government has acknowledged, DOL's H-2A program regulations required it to publish an updated AEWR before the end of calendar year 2020, since the 2020 AEWRs were published on December 19, 2019 and became effective on January 2, 2020. *See, e.g.*, ECF No. 31 at 18-19. And the preliminary injunction entered in this case required DOL to use data from the October 2020 FLS, as specified in the AEWR methodology promulgated in a 2010 final rule. *See* PI Order at 39. Had the Government properly administered this program—or if USDA had promptly complied with the *Perdue* injunction—the necessary data would have been available for DOL to publish 2021 AEWRs before the end of 2020. But they were not available, solely because USDA had illegally attempted to cancel the October 2020 FLS and November 2020 FLR and then unjustifiably delayed compliance with the *Perdue* injunction for months. *See* Order Denying Defs.' Mot. to Modify and Dissolve the TRO and Prelim. Inj. 3 n.1, *United Farm Workers v. Perdue*, No. 1:20-cv-1452-DAD-JLT (E.D. Cal. Nov. 25, 2020) ECF No. 43. Plaintiffs estimate that Defendants' delay cost the average affected farmworker laboring on California farms as much as $325 over the past two months. This is a significant amount for families surviving on subsistence incomes. *See* PI Order at 23. Total wage adjustment payments likely exceed $10 million.

Farmworkers should not be forced to absorb two months of lost wages and suffer economic hardship on account of DOL and USDA's invalid administrative actions. Plaintiffs therefore respectfully ask that the Court order DOL to direct H-2A program employers to issue wage adjustment payments to H-2A and U.S. farmworkers who were paid a wage rate below the geographically applicable 2021 AEWR for labor undertaken between January 1, 2021 and February 23, 2021. This Court's Supplemental Order of January 12, 2021, which clarified the timeline for DOL's compliance with the preliminary injunction, already recognized that wage adjustments could be appropriate if the 2021 AEWRs came in substantially higher than the 2020 AEWRs. *See* Suppl. Order at 2-3. The Supplemental Order also recognized that there is precedent for a district court ordering payment of wage adjustments to H-2A workers who were underpaid due to DOL's invalid determination of minimum pay rates. *See* ECF No. 39 at 3 (discussing *Frederick Cty. Fruit Growers Ass'n, Inc. v. Martin*, 968 F.2d

1265, 1269-1276 (D.C. Cir. 1992)). On January 12, 2021, however, the Court did not have before it a sufficient record to assess whether wage adjustments should be paid: the FLR had not been published, so it was unknown whether the 2021 AEWRs would be substantially higher than the 2020 AEWRs. Accordingly, the Court declined to order wage adjustments at that time but ordered DOL to notify H-2A employers that they might need to pay wage adjustments in the future.

The time has now come for these wage adjustments to be implemented expeditiously so that a meaningful proportion of farmworkers receive the wage adjustments to which they are entitled. As the Court has emphasized, it is logistically challenging to provide *post hoc* payments to this population of migrant farmworkers,[3] and the passage of time only exacerbates these difficulties as farmworkers leave their temporary employment and head to other regions or, in the case of H-2A workers, return to their home countries. As explained further below, these workers' legal claims to wage adjustments do not depend on a final judgment on the merits in this proceeding, and prompt adjudication of this issue is required if workers are to actually receive the wage adjustment to which they are entitled. Therefore, while the Court previously deferred ruling on the wage adjustment issue, Suppl. Order at 2-3, Plaintiffs respectfully request that Defendants be ordered to comply with the preliminary injunction by immediately directing H-2A employers to remit wage adjustments to qualifying farmworkers.

## ARGUMENT

### I. H-2A Workers And U.S. Farmworkers Are Entitled To Wage Adjustments

The 2021 AEWRs, published in the Federal Register by DOL on February 23, 2021 and effective immediately, represent a significant pay increase of approximately five percent over the 2020 AEWRs, on average nationwide. *Compare* Employment and Training Administration, 86 Fed. Reg. 10,996 (Feb. 23, 2021) (2021 AEWRs) *with* Employment and Training Administration, 84 Fed. Reg. 69,774 (Dec. 19, 2019) (2020 AEWRs). This increase continues the multi-year trend in which agricultural wages rose

[3] *See* Tr. TRO, *United Farm Workers v. Perdue* 38-39, No. 1:20-cv-1452-DAD-JLT (E.D. Cal. Oct. 20, 2020) ("[T]he plaintiffs, the make-up of that population is such, you know, migrant, non-migrant farmworkers. They travel, they sometimes, but not always, end up at the same locations.… [T]his is a population that is not easily traceable or you can't go back and say, 'Hey, by the way, we underpaid you by $500 last year. Where do you want us to send the check?' It's not that easy.").

more quickly than non-farm wages in the economy overall.[4] But AEWRs grew even faster in several major agricultural states, including California, where the 2021 AEWR is more than 8.6% higher than the 2020 AEWR. *See* 86 Fed. Reg. at 10,996.

This growth in the AEWRs should have automatically and immediately resulted in raises for H-2A workers and U.S. farmworkers in corresponding employment at H-2A program employers. Under longstanding H-2A program regulations, H-2A employers are never permitted to pay H-2A workers or U.S. farmworkers in corresponding employment wages below the applicable AEWR in effect at the time the work is performed. *See* 20 C.F.R. § 655.122(l). Accordingly, if DOL increases the applicable AEWR during the time an employment contract is in force and the new AEWR exceeds the contract wage rate, then the employer is automatically required to increase covered workers' wages to the level of the new AEWR. The existing H-2A program regulations also contemplate that the Department may implement mid-contract wage adjustments by publication in the Federal Register, *see* 20 C.F.R. § 655.120(b)(2), and by notice to the employer, *see* 20 C.F.R. § 655.120(c).

DOL's February 23, 2021 publication of 2021 AEWRs was nearly two months late. Under its own regulations, DOL is obliged to publish updated AEWRs at least once each calendar year, *see* 20 C.F.R. § 655.120(b)(2), and courts have held that "DOL must comply with its own regulations and establish AE[W]Rs on a yearly basis for all applicable states," *NAACP, Jefferson Cty. Branch v. Donovan*, 566 F. Supp. 1202, 1207 (D.D.C. 1983). The AEWRs in effect for calendar year 2020 were published in the Federal Register on December 19, 2019 and became effective January 2, 2020. *See* 84 Fed. Reg. at 69,774-69,775. DOL was therefore required to publish new AEWRs during calendar year 2020. Defendants have acknowledged as much. *See, e.g.*, ECF No. 31 at 18-19. Having failed to do so, "defendants are … remiss in their duties." *NAACP, Jefferson Cty. Branch*, 566 F. Supp. at 1206-1207. Neither the November 5, 2020 publication of the final rule nor the Department's public notifications that the final rule's wage freeze would become effective December 21, 2020 satisfied DOL's duty to publish new AEWRs, because this Court enjoined the final rule as an unlawful administrative action. *See* PI

---

[4] *Compare* Feb. 11, 2021 Farm Labor Report 1-2 ("The 2020 annual average combined gross wage for field and livestock workers was $14.62, up 5 percent from the 2019 annual average of $13.99 per hour.") *with* Bureau of Labor Statistics, *Employment Cost Index – December 2020* 1, USDL-21-0126 (Jan. 29, 2021), https://www.bls.gov/news.release/pdf/eci.pdf (reporting 2.6 percent increase in wages and salaries for civilian workers over calendar year 2020).

Order at 39. Under the preliminary injunction, DOL was required to follow the AEWR methodology set forth in the 2010 final rule. *See id.* But Defendants had signaled their intent to use their own failure to publish an AEWR by the end of the year as required by an injunction as an excuse to "operat[e] the H-2A program without an AEWR, lowering the wage floor established in the 2020 AEWRs to the federal or state minimum wage"—an even worse outcome for farmworkers than DOL's improper wage freeze. *Id.* at 31. In response to this signal, the Court exercised its equitable powers to eliminate any doubt that DOL could provisionally enforce the 2020 AEWRs until its belated publication of 2021 AEWRs. *See id.* at 35. The Court's rebuke of DOL's extreme position did not eliminate DOL's obligation to publish a new AEWR during calendar year 2020 using the methodology reliant on the annual average field and livestock worker wage, as reported in the FLR.[5] Therefore, as of January 1, 2021, the 2020 AEWRs were invalid, even if provisionally in force, because DOL had defaulted on its obligation to publish updated AEWRs during calendar year 2020 based on the FLR's 2020 annual average wage for field and livestock workers combined.

Nor can there be any dispute that the Government bears sole responsibility for DOL's failure to issue timely 2021 AEWRs. Had DOL had access in December to the necessary FLS data on 2020 agricultural wages, it undoubtedly would have been able to publish 2021 AEWRs by the end of the calendar year, as required by 20 C.F.R. § 655.120(b)(2). If USDA had not tried to illegally cancel the October 2020 FLS data collection—or if USDA had promptly complied with the *Perdue* injunction rather than delaying FLS data collection for months without explanation—then DOL would have been in a position to timely issue substantially increased 2021 AEWRs by the end of calendar year 2020, as 20 C.F.R. § 655.120(c) requires. DOL's failure to timely publish 2021 AEWRs was therefore "a predicament that the government itself … created." PI Order at 32.

H-2A employers have been on notice about the potential that higher 2021 AEWRs could result in the need to make retroactive wage adjustments. DOL expressly informed employers on January 15,

[5] Similarly, the January 12, 2021 Supplemental Order directed DOL to notify state workforce agencies, employers, and the public that the 2020 AEWRs would remain in effect until publication of the 2021 AEWRs. *See* Suppl. Order at 3. This exercise of the Court's equitable powers to craft a remedy for DOL and USDA's maladministration also did not render 20 C.F.R. § 655.120(b)(2)'s annual AEWR publication requirement a nullity. Rather, the Court merely ensured that farmworkers would receive a minimum degree of wage protection until USDA and DOL corrected their administrative errors and published the overdue FLR and AEWRs.

2021 that this unsettled regulatory situation could result in the need to provide retroactive wage adjustments.[6] Indeed, the January 15 notice contemplated exactly what Plaintiffs now ask the Court to order: further notification to employers that retroactive wage adjustments are due to qualifying farmworkers. But H-2A employers were on notice even earlier that they were operating under a precarious regulatory regime. The Court's December 23, 2020 Order clearly prohibited the 2020 final rule's wage freeze, and Defendants have acknowledged that was no other legal basis for the unadjusted 2020 AEWRs to continue in force into 2021. *See* PI Order at 31; *see also NAACP, Jefferson Cty. Branch*, 566 F. Supp. at 1206 (holding that there is "no legal support for the position" that DOL need not update AEWRs annually and so may permit AEWRs to "remain in effect indefinitely"). Indeed, the Order highlighted Plaintiffs' stated intention to seek precisely the wage adjustments requested in the instant motion. *See* PI Order at 32. Moreover, wage adjustments would not impose any unanticipated costs on H-2A employers. Had USDA and DOL not attempted to illegally manipulate the calculation of farmworkers' wages through their arbitrary cancelation of the FLS and promulgation of the invalid final rule, the growth in farmworkers' wages during 2020 would have been measured by the FLS and reflected in revised 2021 AEWRs in due course. And under longstanding H-2A program rules, which were not replaced by the November 5, 2020 final rule, H-2A program employers would have had to adjust their workers' wages to reflect the measured wage growth as soon as the 2021 AEWRs took effect. *See* 20 C.F.R. § 655.122(l). Therefore, H-2A employers would not be unjustly affected were wage adjustments ordered by the Court, since a duty to pay wage adjustments would impose on employers only costs that they would have borne anyway had the government never attempted to artificially depress farmworkers' wages in violation of the Immigration and Nationality Act.

Farmworkers, on the other hand, would suffer severe and irreparable harm were they not to receive wage adjustments. *See* PI Order at 33 (holding that farmworkers' depressed wages would constitute irreparable harm). Farmworkers are among the lowest-paid workers in the United States, so "[r]educing farmworkers wages by approximately four or five percent would therefore clearly cause substantial harm to plaintiffs' members and their families." *Id.* at 28 (discussing ECF No. 5-10 at ¶¶ 11-

---

[6] *See* U.S. Dep't of Labor, Employment and Training Administration – Announcements (Jan. 15, 2021), https://www.dol.gov/agencies/eta/foreign-labor/news.

16). Many farmworkers already struggle to pay for necessities, and this challenge has been exacerbated by increased consumer prices and reduced hours over the past year "caused by the ongoing COVID-19 pandemic, leaving an already impoverished population even more vulnerable." *Id.* at 29 (discussing ECF No. 5-11 at ¶ 8). Plaintiffs estimate, based on H-2A job order certification data, that the typical affected farmworker employed in California since the start of 2021 would receive approximately $325 in wage adjustments, a significant sum for a worker on a subsistence income.[7] Nationwide, Plaintiffs estimate that more than 73,200 H-2A workers would receive wage adjustments, with a typical payment of approximately $132.[8] These recent wage losses, caused by DOL's failure to timely publish 2021 AEWRs, have therefore imposed exactly these kinds of harms to farmworkers and their families, which the Court recognized as the basis for the preliminary injunction. *See* PI Order at 23; *see also Paxton v. Sec'y of Health & Human Servs.*, 856 F.2d 1352, 1354 (9th Cir. 1988) ("When a family is living at subsistence level, the subtraction of any benefit can make a significant difference to its budget and to its ability to survive."). In the interests of justice, DOL should therefore be ordered to take the actions described below and direct H-2A program employers to pay wage adjustments, which will mitigate, to the extent possible, the harms that Defendants' illegal actions have imposed on farmworkers and their families.

## II. DOL Can Administer Wage Adjustments

As this Court has recognized, it can be challenging to reach migrant farmworkers after they have left a worksite.[9] Since that difficulty only grows with time, as workers complete their temporary work contracts and move on, it is imperative for DOL to begin the process of wage adjustment payments as soon as possible. Fortunately, it should be quick and relatively straightforward for DOL to implement Plaintiffs' wage adjustment proposal, and employers should be readily able to comply.

---

[7] *See* U.S. Dep't of Labor, Employment and Training Administration – Performance Data – H-2A Disclosure Data FY2021 Q1, https://www.dol.gov/sites/dolgov/files/ETA/oflc/pdfs/H2A_Disclosure_Data_FY2021_Q1.xlsx (last visited Mar. 10, 2021); U.S. Dep't of Labor, Employment and Training Administration – Performance Data – H-2A Disclosure Data FY2020, https://www.dol.gov/sites/dolgov/files/ETA/oflc/pdfs/H-2A_Disclosure_Data_FY2020.xlsx (last visited Mar. 10, 2021).

[8] *See id.* The available job order certification data reflect H-2A workers; Plaintiffs expect that including U.S. farmworkers in corresponding employment would increase the number of workers who would receive wage adjustments.

[9] *See* Tr. TRO, *United Farm Workers v. Perdue*, *supra* n.3.

Plaintiffs respectfully request that the Court order DOL to immediately notify state workforce agencies, H-2A program employers, and the public that farmworkers who performed work at H-2A employers between January 1, 2021 and February 23, 2021 (Wage Adjustment Period) may be entitled to wage adjustments. DOL may effect this notice through a Federal Register publication, via a notice on its website (as contemplated by its January 15, 2021 notice, posted in compliance with the Court's January 12, 2021 Supplemental order, *see* n.6 *supra*), and by direct communications with state workforce agencies and affected employers. The notice should direct each H-2A employer to remit within 60 days of the notice the appropriate wage adjustment to all farmworkers who were paid a wage below the geographically applicable 2021 AEWR and to retain records reflecting those payments or the efforts made to make such payments to qualifying farmworkers. These notices should also state that any H-2A employer that had an active job order during the Wage Adjustment Period will be required to certify compliance with this wage adjustment directive as part of its next application for H-2A certification.

Employers can easily calculate the appropriate wage adjustment. Had DOL discharged its duty to publish updated AEWRs before the end of calendar year 2020 using 2020 FLS data, then the wage rates announced on February 23, 2021 would have been in place from the start of 2021, and no H-2A workers or U.S. farmworkers in corresponding employment could legally have been paid less than the applicable AEWR. Therefore, all H-2A workers and U.S. workers in corresponding employment who worked during the Wage Adjustment Period ("Qualifying Farmworkers") are potentially entitled to a wage adjustment. The appropriate amount of the wage adjustment for each Qualifying Farmworker would therefore be the total number of hours worked during the wage adjustment period times the difference between the wage paid and geographically appropriate 2021 AEWR. This process would impose low burdens on both DOL and employers, since employers are already required by H-2A program regulations to retain contact information for former H-2A workers and U.S. farmworkers who were in corresponding employment, *see* 20 C.F.R. §§ 655.122(j), 655.153, 655.156(a)(2).

With respect to enforcement, Plaintiffs ask that the Court order DOL to require that any H-2A employer with H-2A workers or U.S. workers in corresponding employment during the Wage

Adjustment Period be required to certify compliance with the wage adjustment requirement as part of its next H-2A application.[10] Plaintiffs further ask the Court to order that DOL must inform H-2A employers that it will audit the compliance records of an appropriate sample of affected H-2A employers, that DOL must conduct a review necessary to verify substantial compliance by a sample of these H-2A employers, and that DOL must provide Plaintiffs with a report on the findings of this audit by October 1, 2021.

**III. The Court Has Authority To Order DOL To Direct H-2A Employers To Pay Farmworkers Wage Adjustments, And Prompt Action Is Required**

Farmworkers cannot be made to bear the costs of the federal government's attempt to illegally prevent farmworker wages from rising. But unless Qualifying Farmworkers receive wage adjustments as described above, many thousands of people will have toiled for two months in fields across this country at wages that were countenanced through invalid administrative action and that would have been below the applicable AEWR had DOL lawfully discharged its duty to ensure that growers' importation of agricultural guestworkers does not adversely affect U.S. farmworkers. *See* 8 U.S.C. § 1188(a)(1)(B); *NAACP, Jefferson Cty. Branch*, 566 F. Supp. at 1206 ("In administering the labor certification program, DOL is charged with protection of workers," so permitting growers to pay wage rates that are invalid under DOL's own regulations is "antagonistic" to the statutory duties "with which DOL has been entrusted."). This Court has recognized that it has "broad latitude in fashioning equitable relief when necessary to remedy an established wrong," PI Order at 34 (quoting *Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*, 524 F.3d 917, 936 (9th Cir. 2008)), and these equitable powers permit the Court to order wage adjustments to H-2A workers underpaid due to DOL's invalid administrative actions.

As the Court noted in its Supplemental Order, "district courts have awarded backpay to workers based upon 'the principle of equitable restitution.'" ECF No. 39 at 3 (quoting *Frederick Cty. Fruit Growers Ass'n*, 968 F.2d at 1269). In *Frederick County Fruit Growers Association*, the district court

[10] This is consistent with H-2A program regulations, which contemplate exclusion of certain employers from the program in certain circumstances and that permit reinstatement where the employer has provided evidence of restitution to workers who were harmed by the employer's improper conduct. *See* 20 C.F.R. § 658.504(a)(2)(ii). And courts have previously ordered DOL to condition future temporary labor certifications as a means of enforcing equitable restitution awards. *See, e.g.*, *NAACP, Jefferson Cty. Branch*, 566 F. Supp. at 1210.

held that H-2A workers who had worked the 1983 harvest were "entitled to restitution because the 1983 regulation, which permitted the growers to pay [a] lower … rate, was subsequently held invalid in [parallel litigation]; as a result, the growers paid the workers less than they were obliged by law to pay." 968 F.2d at 1269. Applying this approach, the court "analyze[s] the remedial aspect of th[e] case much as it would a successful … challenge to a rate increase that had been duly implemented by a regulated carrier after approval by a regulatory agency." *Id*. at 1272. The rule from the rate-setting context, which the D.C. Circuit held was properly applied in the H-2A context, is that "[e]quitable restitution is the proper remedy … when funds have either been paid or withheld pursuant to an invalid administrative edict." *Id.* (internal quotation marks and citations omitted). To not order wage adjustments "would be to give legal effect to the [agency's] invalid order." *Democratic Cent. Comm. of D.C. v. Washington Metro. Area Transit Comm'n*, 485 F.2d 786, 825 (D.C. Cir. 1973); *see also Montana Power Co. v. Fed. Energy Reg. Comm'n*, 599 F.2d 295, 300 (9th Cir. 1979) (citing *Democratic Cent. Comm. of D.C.* and endorsing its approval of restitution to ratepayers).

Ordering wage adjustments under an equitable restitution theory would not unjustly prejudice the H-2A employers who would need to remit the required payments. If the Court orders wage adjustments to be paid here, H-2A employers will have paid no more for labor overall than they would have if DOL had followed its own regulations and timely published 2021 AEWRs reflecting 2020 market wages. And finally, as explained above, H-2A employers were on notice before January 1, 2021 that 2021 AEWRs would be based on 2020 market wages, calculated according to the methodology set forth in DOL's 2010 final rule. Therefore, "growers did not reasonably rely upon the [invalid] regulation during the" Wage Adjustment Period. *Federick Cty. Fruit Growers Ass'n*, 968 F.2d at 1273.

It is well established that DOL can ensure that agricultural guestworkers and U.S. farmworkers in corresponding employment are retroactively compensated in instances in which DOL erred in setting minimum rates of pay. That there is no express provision in the H-2A program regulations for payment of wage adjustments is irrelevant to the instant motion, because "[r]estitution is available at the discretion of the court where the equities so warrant, despite the absence of a statute or contract providing therefor." *Morrison v. U.S. Dep't of Labor*, 713 F. Supp. 664, 672 (S.D.N.Y. 1989). For

instance, in *NAACP, Jefferson County Branch*, after DOL's AEWR and piece rate regulations were held to be invalid, the district court ordered that DOL "shall take all necessary steps to ensure that the West Virginia growers pay back wages to their employees who worked during the 1982 apple harvest to bring their wages to the level they would have earned had their wages been based on [the proper AEWR and piece rates]." 566 F. Supp. at 1210. The Court also enjoined DOL from granting further labor certifications to any employer that had not made best efforts to ensure that these wages adjustments reached the farmworkers to whom they were entitled. Other cases have similarly sanctified retroactive compensation to farmworkers paid minimum wage rates or piece rates that were found to have been invalid under DOL's regulations. *See, e.g.*, *Joseph v. Dep't of Labor*, 787 F. Supp. 245, 246 (D.D.C. 1991) ("If [farmworker] plaintiffs do manage to have a prevailing rate set [higher] for the 1990-1991 harvest season, they may be able to obtain back wages from employers for that season, during which plaintiffs received a lower minimum wage. Either DOL could require back pay, or plaintiffs could bring a subsequent action in Florida to require the growers to make back payments."); *Federick Cty. Fruit Growers Ass'n, Inc. v. McLaughlin*, 703 F. Supp. 1021, 1034 (D.D.C. 1989) ("[E]quity simply will not permit the Growers to retain funds wrongfully withheld."); *see also Morrison*, 713 F. Supp. at 671, 676 (holding that restitution of wage adjustments is an available remedy for H-2A workers but declining to order restitution where growers reasonably relied on DOL's interpretation of its own regulations that was lawful at the time).

Finally, time is of the essence in directing that wage adjustments be paid to Qualifying Farmworkers, because the practical difficulty with reaching this population of migrant farmworkers will only grow harder with time. As the Court has repeatedly acknowledged, it is challenging to find and effect payment to a large group of foreign and domestic workers who regularly move with the seasons and may lack permanent addresses, email access, and bank accounts. *See* Tr. TRO, *United Farm Workers v. Perdue*, *supra* n.3; PI Order at 29-30 (discussing ECF No. 5-10 at ¶¶ 22-24). If DOL is ordered to act promptly, many Qualifying Farmworkers are likely to still be working at the same H-2A employers that are required to pay wage adjustments, substantially increasing the likelihood that payments will reach their intended recipients.

The Court need not wait to order DOL to begin the wage adjustment process. Plaintiffs acknowledge that the Court's Supplemental Order indicated that wage adjustments may be appropriate depending on the outcome of the 2021 AEWRs, and that it would defer ruling on the issue until a final judgment on the merits. *See* Suppl. Order at 3-4. Although the necessity of wage adjustments was uncertain when the Court issued its January 12, 2021 Supplemental Order, since USDA had not yet published the November 2020 FLR, the recent publication of substantially increased AEWRs has resolved that uncertainty. Moreover, Qualifying Farmworkers' entitlement to wage adjustments depends entirely on the preliminary injunction, not on this Court's final judgment: no matter how the case is ultimately resolved, the preliminary injunction conclusively determined that the 2020 final rule's wage freeze was invalid during the Wage Adjustment Period and that DOL was required to calculate and publish revised AEWRs before the end of calendar year 2020 in reliance on the 2020 FLS wage data. Therefore, adjudication of the wage adjustment issue is both ripe and urgently required.

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court compel DOL to comply with the preliminary injunction by ordering DOL to immediately direct H-2A employers to pay wage adjustments to qualifying H-2A workers and U.S. farmworkers in corresponding employment and by ordering DOL to undertake the enforcement, audit, and other actions described in Section II, above.

Dated: March 11, 2021

By: /s/ *Mark D. Selwyn*
MARK SELWYN (SBN 244180)
Wilmer Cutler Pickering Hale and Dorr LLP

*Attorney for Plaintiffs*