UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED FARM WORKERS, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>THE UNITED STATES DEPARTMENT OF LABOR, et al.,<br><br>Defendants. | No. 1:20-cv-01690-DAD-JLT<br><br><br>ORDER GRANTING PLAINTIFFS' MOTION SEEKING AN EXTENSION OF THE COURT'S PREVIOUSLY GRANTED PRELIMINARY INJUNCTIVE RELIEF IN THE FORM OF EQUITABLE RESTITUTION<br><br>(Doc. No. 44) |

This matter came before the court on April 6, 2012 for hearing on the motion to enforce compliance with the court's preliminary injunction brought on behalf of plaintiffs United Farm Workers and UFW Foundation (collectively, "plaintiffs").[1] (Doc. No. 44.) Attorneys Bruce Goldstein, Rachel Jacobson, Mark Selwyn, Nicholas Werle, and Trent Taylor appeared by video for plaintiffs, and United States Department of Justice Trial Attorney Michael Gaffney appeared by video for defendants the United States Department of Labor ("DOL") and the Secretary of Labor (collectively, "defendants"). The court will construe plaintiffs' filing as a motion seeking

/////

---

[1] On May 11, 2021, the court held a second hearing on this motion with all counsel appearing telephonically.

1

an extension of the previously granted preliminary injunctive relief in the form of equitable restitution. For the reasons explained below, the court will grant plaintiffs' pending motion.

## BACKGROUND

The factual background of this case was set forth in the court's order granting plaintiffs' motion for a preliminary injunction. (*See* Doc. No. 37.) That background will not be repeated here in its entirety. Only those facts relevant to the disposition of this motion will be discussed below.

On December 23, 2020, the court granted plaintiffs' motion for a preliminary injunction. (Doc. No. 37.) Therein, the court prohibited defendants from implementing the final rule published on November 5, 2020. (*Id.* at 39); *see also Adverse Effect Wage Rate Methodology for the Temporary Employment of H-2A Nonimmigrants in Non-Range Occupations in the United States*, 85 Fed. Reg. 70,445 (Nov. 5, 2020) ("the AEWR final rule"). Defendants were ordered to operate under the last uncontested status of the Adverse Effect Wage Rates ("AEWR") calculation methodology. (Doc. No. 37 at 39); *see also Temporary Agricultural Employment of H-2A Aliens in the United States*, 75 Fed. Reg. 6,884 (Feb. 12, 2010) ("the 2010 rule"). The parties were further directed to meet and confer to submit a proposed order that included deadlines by which defendants would set the 2021 AEWRs in accordance with the court's order and with all other legal requirements. (Doc. No. 37 at 39.)

On January 6, 2021, the parties submitted a joint status report stating that they had met and conferred in accordance with the court's December 23, 2020 order. (Doc. No. 38 at ¶ 6–7.) After exchanging proposals and counterproposals, however, the parties failed to reach an agreement as to the language that the court should employ in granting plaintiffs' requested relief. (*Id.* at ¶ 7.) Ultimately, the parties agreed to submit separate proposals for the court's consideration. (*Id.*)

On January 12, 2021, after reviewing those proposals, the court issued a supplemental order regarding the preliminary injunctive relief granted in this action. (Doc. No. 39.) Therein, the court "reserve[d] the issue of whether any award of backpay is warranted based upon the difference between the 2020 AEWRs and the final 2021 AEWRs, if any, until a final ruling on the

merits of plaintiffs' claims." (*Id.* at 2–3.) The court also directed defendants to (1) publish final 2021 AEWRs in the Federal Register on or before February 25, 2021 using the methodology set forth in the 2010 rule; (2) make effective the 2021 AEWRs upon their publication in the Federal Register; (3) notify state workforce agencies, employers, and the public by January 18, 2021 that the 2020 AEWRs would remain in effect during the interim period between December 24, 2020 and publication of the final 2021 AEWRs; and (4) provide notice to all H-2A employers who submitted job orders and applications for H-2A labor certification between December 21, 2020 and the publication of the final 2021 AEWRs, informing them that the potential backpay claims of affected H-2A workers were the subject of ongoing litigation in this action. (*Id.* at 3–4.)

On February 12, 2021, the United States Department of Agriculture published the Farm Labor Report ("FLR") in accordance with this court's preliminary injunction in *United Farm Workers v. Perdue*, No. 1:20-cv-01452-DAD-JLT, 2020 WL 6318432 (E.D. Cal. Oct. 28, 2020). (*See* Doc. No. 44 at 7 n.1.) The FLR, which synthesized the findings of the Farm Labor Survey ("FLS") revealed that the gross wage rate for field and livestock workers during the October 2020 reference week had increased six percent from the previous year. (*Id.* at 7.) Additionally, the annual average gross wage for field and livestock workers—the figure that determines the 2021 AEWRs under the DOL's existing regulations—rose approximately five percent to $14.62. (*Id.*) Accordingly, on February 23, 2021, the DOL published the 2021 AEWRs in compliance with the court's January 12, 2021 supplemental order granting preliminary injunctive relief in this case. (*Id.*); *see also Labor Certification Process for the Temporary Employment of Aliens in Agriculture in the United States: 2021 Adverse Effect Wage Rates for Non-Range Occupations*, 86 Fed. Reg. 10,996 (Feb. 23, 2021). The 2020 AEWRs therefore continued to govern from January 1, 2021 to February 23, 2021 ("the Interim Period") only because the 2021 AEWRs were not published until February 23, 2021 in compliance with this court's order.

On March 11, 2021, plaintiffs filed the pending motion, styled as a motion to enforce compliance with the court's preliminary injunction. (Doc. No. 44.) Specifically, plaintiffs seek an order from this court directing defendants "to comply with the preliminary injunction by immediately directing H-2A employers to remit wage adjustments to qualifying farmworkers."

(Doc. No. 44 at 9.)  On March 23, 2021, defendants filed an opposition to the motion, and plaintiffs replied thereto on March 26, 2021.  (Doc. Nos. 47, 48.)

## ANALYSIS

As an initial matter, the court observes that the pending motion is not a true motion to enforce compliance with this court's preliminary injunction.  Indicative of this is the absence of a request to hold defendants in civil contempt for violating any of the preliminary injunction's directives.[2]  Rather, as effectively conceded at the hearings on the motion, plaintiffs are actually requesting an extension of the relief granted in the court's December 23, 2020 and January 12, 2021 preliminary injunction orders.  Accordingly, the court will construe plaintiffs' filing as a motion for further injunctive relief and specifically for an order requiring equitable restitution.

When the court inquired as to the relevant legal standard governing their pending motion, plaintiffs pointed to the framework established in *Frederick County Fruit Growers Association v. McLaughlin*, 703 F. Supp. 1021, 1024 (D.D.C. 1989) ("*Frederick County I*"), *aff'd sub nom. Frederick Cnty. Fruit Growers Ass'n, Inc. v. Martin*, 968 F.2d 1265 (D.C. Cir. 1992) ("*Frederick County II*").  That case too involved an Administrative Procedure Act ("APA") challenge of a DOL rule affecting wage rates for migrant farmworkers.  After growers underpaid the farmworkers for a period of time pursuant to the DOL's invalid rule, the court in *Frederick*

---

[2]  "[C]ourts have inherent power to enforce compliance with their lawful orders through civil contempt."  *Spallone v. United States*, 493 U.S. 265, 276 (1990) (quoting *Shillitani v. United States*, 384 U.S. 364, 370 (1966)).  "A party may be held in civil contempt where it 'fail[ed] to take all reasonable steps within the party's power to comply [with a specific and definite court order].'"  *Fed. Trade Comm'n v. Productive Mktg., Inc.*, 136 F. Supp. 2d 1096, 1107 (C.D. Cal. 2001) (quoting *In re Dual–Deck Video Cassette Recorder Antitrust Litigation*, 10 F.3d 693, 695 (9th Cir.1993)).  "The party alleging civil contempt must demonstrate that the alleged contemnor violated the court's order by 'clear and convincing evidence,' not merely a preponderance of the evidence."  *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993).  Here, however, defendants have complied with each of the specific directives set forth in this court's January 12, 2021 supplemental order, and it appears that there are no additional directives for which the court could enforce compliance.  (*See* Doc. No. 44 at 11–12) (explaining that the DOL put employers on notice, as required by the court's January 12, 2021 supplemental order); 86 Fed. Reg. 10,996 (publishing and giving effect to the 2021 AEWRs); *W. Knight Foster P'ship v. Saratoga Data Sys., Inc.*, No. 16-cv-02406-PJH, 2018 WL 1000373, at *2 (N.D. Cal. Feb. 21, 2018) ("The court does not find "that any remedy is warranted under the preliminary injunction," because defendants did comply with the preliminary injunction and "plaintiff[s] cannot [seek this relief] through the present motion to enforce the preliminary injunction.").

*County I* found that equitable restitution required the growers to pay farmworker's backpay. *Id.* at 1028–29. In making this determination, the court in *Frederick County I* relied on

> [t]he legal principle . . . that when funds have been either paid or withheld pursuant to **an invalid administrative edict**, the proper remedy is equitable restitution. However, because the restitutionary remedy is a matter of equity, reimbursement of funds will be required only to the extent that justice between the parties requires. Equity will require such a result only when the money was obtained in such circumstances that the possessor will give offense to equity and good conscience if permitted to retain it.

*Id.* at 1029 (emphasis added) (internal citations and quotation marks omitted).

The court finds this framework to be persuasive here, particularly in light of the shared H-2A context. "The district court has broad latitude in fashioning equitable relief when necessary to remedy an established wrong." *Alaska Ctr. for Env't v. Browner*, 20 F.3d 981, 986 (9th Cir. 1994); *see also Frederick Cnty. II*, 968 F.2d at 1272. That principle applies when an agency fails to act pursuant to its governing statute's provisions. *See id.* ("To limit relief . . . would unduly interfere with the statutory scheme established by Congress."); *Democratic Cent. Comm. of D.C. v. Washington Metro. Area Transit Comm'n*, 485 F.2d 786, 824–25 (D.C. Cir. 1973) (When "a party against whom an erroneous judgment or decree has been carried into effect is entitled, in the event of a reversal, to be restored by his adversary to that which he has lost thereby. This principle . . . is no less applicable to erroneous orders of an administrative agency than to those of a court.") (internal quotation marks omitted).

In applying this framework, the court must first determine whether "funds have been either paid or withheld pursuant to an invalid administrative edict." *Frederick County I*, 703 F. Supp. at 1029. The question is therefore whether the Interim Period constitutes an "invalid administrative edict." In their motion, plaintiffs argue that the DOL's February 23, 2021 publication of the 2021 AEWRs was nearly two months late under DOL's own regulations, and the court's injunction did not eliminate DOL's obligation to publish new AEWRs during calendar year 2020 but rather sought to enforce that obligation. (Doc. No. 44 at 10–11.) They argue that the 2020 AEWRs became invalid, even if provisionally kept in force and effect by the court, as of January 1, 2021. (*Id.* at 11.) Plaintiffs acknowledge that the court's January 12, 2021

supplemental order reserved the backpay issue until final judgment, but also assert that the issue of backpay is now ripe for adjudication. (*Id.*) According to plaintiffs, it is now clear that the 2021 AEWRs represent a significant pay increase for farmworkers nationwide. (*Id.* at 9.) Plaintiffs note that the AEWRs rose even faster in several major agricultural states, including California, where the 2021 AEWR is more than 8.6 percent higher than the 2020 AEWR. (*Id.* at 10) (citing 86 Fed. Reg. at 10,996. Plaintiffs contend that this growth in the AEWRs should have automatically and immediately resulted in raises for H-2A workers and U.S. farmworkers in corresponding employment at H-2A program employers. (*Id.*) They note that the DOL's regulations do not permit H-2A employers to pay H-2A workers or U.S. farmworkers in corresponding employment wages below the applicable AEWR in effect at the time the work is performed. (*Id.*) (citing 20 C.F.R. § 655.122(l)). In sum, plaintiffs argue that H-2A workers should not be underpaid due to the DOL's invalid administrative action or inaction. (*Id.*)

The court agrees. When the court enjoined defendants from giving effect to the AEWR final rule, it noted that the 2021 AEWRs not being timely published by December 31, 2020 was "a predicament that the government itself has created." (Doc. No. 37 at 32.) As plaintiffs' put it, "[h]ad DOL had access in December to the necessary FLS data on 2020 agricultural wages, it undoubtedly would have been able to publish 2021 AEWRs by the end of the calendar year, as required by 20 C.F.R. § 655.120(b)(2)." (Doc. No. 44 at 11.) Moreover, absent this court's preliminary injunction extending the compliance deadlines, defendants would have been in violation of the DOL's regulations. Indeed, defendants effectively conceded as much at the time the preliminary injunction was issued. (Doc. No. 31 at 30) ("[I]f the Rule is vacated . . . DOL will set the 2021 AEWRs using the 2020 rates, or, if that is not possible given DOL's current regulations, DOL will be forced to assess operating the H-2A Program without an AEWR  . . . .").

The court's equitable extension of the DOL's deadline was intended to facilitate defendants' compliance with the court's preliminary injunction and other legal requirements. Defendants assert that the court's January 12, 2021 supplemental order "confirmed that the 2020 AEWRs remained 'in effect during the interim period between December 24, 2020 and publication of the final 2021 AEWRs.'" (Doc. No. 47 at 5) (citing Doc. No. 39 at 3). However,

the court ordered the publication of the final 2021 AEWRs and the extension of the 2020 AEWRs pursuant to its power under the APA "to compel 'agency action unlawfully withheld or unreasonably delayed.'" *Indep. Min. Co. v. Babbitt*, 105 F.3d 502, 507 (9th Cir. 1997) (citing 5 U.S.C. § 706(1)). By that time, defendants had unreasonably delayed the publication of the 2021 AEWRs. Defendants cannot now take shelter under the court's emergency relief to assert that a valid administrative edict existed during the Interim Period. (*See* Doc. No. 47 at 10.) Moreover, as plaintiffs noted at the hearing on the pending motion, a finding that the Interim Period was a valid scheme is inconsistent with the reservation of the backpay determination in the January 12, 2021 supplemental order and its citation to *Frederick County II*, as there would otherwise have been no reason to reserve this issue. Accordingly, the court finds that the Interim Period constitutes an invalid administrative edict, and the difference between the 2020 AEWRs and the 2021 AEWRs constitutes funds withheld pursuant to that invalid administrative edict.

The court must next determine whether "justice between the parties requires" a backpay award. *Frederick Cnty. I*, 703 F. Supp. at 1029. Answering this question requires a balancing of the equities. *Id.* The court finds the factors set forth in *Morrison v. United States Department of Labor* to be instructive and will therefore employ the approach adopted by the court in that case. In applying this equitable restitution framework in the context of H-2A workers, the court in *Morrison* held that "the weightiest factor for the Court's consideration is whether the growers relied on the approval by the DOL and whether such reliance was reasonable." *Morrison v. U.S. Dep't of Lab.*, 713 F. Supp. 664, 673 (S.D.N.Y. 1989). The court will therefore begin by determining whether the growers reasonably relied on the DOL's approval of lower wage rates during the Interim Period.

In *Frederick County II*, the D.C. Circuit affirmed the district court's backpay award, and rejected the growers' claims of reasonable reliance and substantial hardship. The court noted that "when the growers made plans for the 1983 harvest and filed their job clearance orders to hire H-2 workers, there was at the least a significant possibility that the 1983 harvest would be governed" by the last effective regulation. *Frederick Cnty. II*, 968 F.2d at 1273. The court also noted that, in light of the district court having enjoined the 1983 regulation, "the growers knew

'full well that the [1983 regulation] was, if not flatly invalid, of at least dubious validity.'" *Id.* at 1274; *see also id.* ("If the growers 'relied' upon the 1983 regulation thereafter, then it was only in the sense that they calculated that they were better off to pay the lower wage and hope to prevail on appeal—figuring that prevailing on appeal would be a Pyrrhic victory if they had already paid the higher wage. But that was merely an attempt at self-help, not a case of reasonable reliance.").

In this case, any expectation that the growers would pay lower wage rates during the Interim Period became unreasonable once defendants notified the public otherwise on January 15, 2021 pursuant to this court's January 12, 2021 supplemental order. At that time, growers certainly knew there was *more* than a significant possibility that the Interim Period's wages would be reset by the 2021 AEWRs. *Frederick Cnty. II*, 968 F.2d at 1273. However, the court acknowledges that growers may well have reasonably relied on the expectation of lower wage rates *until* they were given notice on January 15, 2021. In November, the DOL published the AEWR final rule in the Federal Register informing growers that the 2021 AEWRs would no longer be calculated based on the 2010 rule's methodology, and it was not unreasonable for growers to follow this direction. That rule was in effect for two days before it was enjoined, and growers resumed paying farmworkers at the 2020 AEWRs' rate. *See Frederick Cnty. I*, 703 F. Supp. at 1029 (denying backpay for the 1984 harvest and finding that growers had reasonable reliance under the DOL's direction). This is distinguishable from *Frederick County II*, where the court found that once "the district court enjoined the Secretary from implementing the 1983 regulation, the growers knew 'full well that the [1983 regulation] was, if not flatly invalid, of at least dubious validity.'" *Frederick Cnty. II*, 968 F.2d at 1274. In this case, even if growers knew that the AEWR final rule was being litigated,[3] that does not render their initial reliance on the

/////

/////

/////

/////

---

[3] *See United Farm Workers v. Perdue*, No. 1-20-cv-01452-DAD-JLT, 2020 WL 6939021, at *4 n. 4 (E.D. Cal. Nov. 25, 2020).

AEWR final rule from November 5, 2020 to January 15, 2021 unreasonable in the court's view.[4] When plaintiffs moved for preliminary injunctive relief, there were potentially meritorious arguments being advanced by both sides. Thus, the AEWR final rule was not so obviously invalid that growers should have expected to prepare for AEWR rates calculated under the 2010 rule when plaintiffs filed this action. In sum, the court finds that consideration of the extent of the reasonableness of the growers' reliance upon the DOL weighs in favor of granting equitable restitution to plaintiffs, but only as it pertains to the time period from January 15, 2021 to February 23, 2021.

Other factors the court in *Morrison* considered included "the role of the DOL in setting the rates, the timing of the action, the absence of a statutory refund power, and the lack of bad faith." *Morrison*, 713 F. Supp. at 675. As to the first factor, the court held that growers "should not be forced to bear the cost" when "the wage rate was set by the DOL, not by the growers." *Id.* The same principle applies to this case.

However, the court finds that the timing of events in this case does weigh in favor of granting equitable restitution. In *Morrison*, the DOL improperly applied the prevailing wage legislation when approving growers' H-2A work orders in the year 1986. *Id.* at 669. Growers submitted their workorders by May 1986, and suit was brought in August 1986. *Id.* at 673. That suit was filed "just days prior to the commencement of the harvest season." *Id.* In contrast, this action was filed twenty-five days after the AEWR final rule was promulgated on November 5, 2020. (*See* Compl.) On December 23, 2020, the court enjoined the rule two days after it went into effect. (*See* Doc. No. 37.) The quick turnaround between the initiation of this lawsuit and the short period of time that the AEWR final rule was in effect weighs in favor of granting

---

[4]  The court notes that the growers being nonparties to this action does not nullify the notice arising from the court's rulings in this case. *See Frederick Cnty. II*, 968 F.2d at 1274 (affirming that the non-party growers were on notice given the court's injunction); *See NAACP v. Donovan*, 558 F. Supp. 218, 223 (D.D.C. 1982) ("*NAACP I*") ("This suit requires determination of one basic issue—whether the DOL is complying with its own regulations. Clearly the ruling of the Court will affect all those people who are affected by the regulations at issue. But this fact does not make all of those effected individuals indispensable parties. Courts have often held that in suits to compel federal agencies to obey the law the countless people or entities who would be effected thereby do not become necessary parties.").

equitable restitution.  *See Morrison*, 713 F. Supp. at 675 ("As a result of this [three month] delay [in bringing suit], the growers took actions which irrevocably committed them to cultivating their crop and harvesting it with the help of H–2 workers.").

The court next considers "the absence of a statutory refund power." *Id.*  Defendants contend that this applies here because they lack the power to require employers to remit the requested backpay.  (Doc. No. 47 at 8–9.)  Plaintiffs counter that the DOL's regulations contemplate circumstances where defendants can require a wage adjustment during a work contract upon notice to the employer.  (Doc. No. 44 at 10); *see also* 20 C.F.R. § 655.120(c) ("If the prevailing hourly wage rate or piece rate is adjusted during a work contract, and is higher than the highest of the AEWR, the prevailing wage, the agreed-upon collective bargaining wage, or the Federal or State minimum wage, in effect at the time the work is performed, the employer must pay that higher prevailing wage or piece rate, upon notice to the employer by the Department.").  Indeed, plaintiffs request that the court order the DOL to require any H-2A employer with H-2A workers or U.S. farmworkers in corresponding employment during the Interim Period to certify compliance with the wage adjustment requirement as part of its next H-2A application.  (*Id.* at 14–15.)  Plaintiffs note that courts have previously ordered the DOL to condition future temporary labor certifications as a means of enforcing equitable restitution awards such as that which they seek here.  (*Id.* at 15 n. 10) (citing *NAACP, Jefferson County Branch v. Donovan*, 566 F. Supp. 1202 (D.D.C. 1983) ("*NAACP II*")).

Explicit statutory authority supporting the award of equitable restitution is lacking. Nonetheless, plaintiffs have persuasively argued that consideration of this factor is entitled to little weight.  Notably, the court in *Morrison* acknowledged that "Part 658 of the regulations does refer to restitution, but a reading of the regulation indicates that it is purely voluntary and not compulsory." *Morrison*, 713 F. Supp. at 675; *see also* 20 C.F.R. § 658.502(a)(4)(ii) (contemplating that an employer's services can be terminated within a certain period of time unless, among other things, the employer proves they provided restitution); 20 C.F.R. § 658.502(a)(5)(ii) (same); 20 C.F.R. § 658.504(a)(2)(ii) (explaining that services may be reinstated to an employer if, among other things, the employer proves they provided restitution).

Thus, while there is no explicit statutory power to effectuate a backpay award, plaintiffs are correct that, by the same token, DOL's regulations do not foreclose a backpay award. In fact, those regulations suggest that the DOL has the power in some form to require backpay. Accordingly, the court finds that the absence of explicit statutory authority only slightly weighs against the award of equitable restitution.

Next, the court considers whether "bad faith" was at play in this case. *Morrison*, 713 F. Supp. at 676. There is nothing in the record suggesting that the growers acted in bad faith when paying workers at the 2020 AEWR rates during the Interim Period. *Id.* ("[T]here is nothing in the record which suggests that when the job orders were approved by the DOL, the growers believed that the prevailing wage regulation was not properly applied."). In fact, growers were complying with this court's January 12, 2021 supplemental order. (*See* Doc. No. 39.)

Finally, the court "consider[s] the public interest in seeing that restitution is granted." *Morrison*, 713 F. Supp. at 676. In their motion, plaintiffs argue that the growth in the AEWRs should have automatically and immediately resulted in raises for H-2A workers and U.S. farmworkers in corresponding employment at H-2A program employers. (Doc. No. 44 at 10.) As plaintiffs have argued throughout this litigation, "[f]armworkers are among the lowest-paid workers in the United States, so '[r]educing farmworkers wages by approximately four or five percent would therefore clearly cause substantial harm to plaintiffs' members and their families.'" (*Id.* at 12) (citing Doc. No. 39 at 28). Plaintiffs further argue that many farmworkers struggle to pay for bare necessities, and this challenge has been exacerbated by increased consumer prices and reduced hours over the past year caused by the ongoing COVID-19 pandemic. (*Id.* at 13) (citing Doc. No. 39 at 29). Plaintiffs estimate, based on H-2A job order certification data, that the typical affected farmworker employed in California since the start of 2021 would receive approximately $325.00 in wage adjustments (*id.*), a significant sum for a worker on a subsistence income. Nationwide, plaintiffs estimate that more than 73,200 H-2A workers would receive wage adjustments, with a typical payment of approximately $132.00. (*Id.*)

Defendants argue that growers operate within a market, setting prices based on the costs of inputs and labor costs, and "[r]etrospectively increasing that cost would put the growers in a

difficult position because they are, of course, unable to" make adjustments "to reflect the true cost of labor." (Doc. No. 47 at 13.) (citing *NAACP I*, 558 F. Supp. at 224). Defendants also argue that such reliance interests are heightened when the amount of potential backpay is not calculated or calculable until after the relevant work has already been performed. (*Id.* at 13–14.) Defendants note that while courts have issued backpay awards in this context in the past, the proper rate in those cases had already been calculated by DOL and was known to employers. (*Id.* at 14) (citing *NAACP II*, 566 F. Supp. at 1210).

The court acknowledges that there are credible arguments on both sides with respect to this factor. In the end, however, it is plaintiffs who have the far more compelling case as to the need for an order requiring equitable restitution. As previously noted, the Ninth Circuit has observed that "[w]hen a family is living at subsistence level, the subtraction of any benefit can make a significant difference to its budget and to its ability to survive." *Paxton v. Sec'y of Health & Human Servs.*, 856 F.2d 1352, 1354 (9th Cir. 1988). The farmworkers should not bear this cost because of the situation defendants have created. That being said, the court acknowledges that the true cost of labor during the Interim Period exceeded plaintiffs' predictions based on FLS trends. (*Compare* Doc. No. 39 at 28 *with* Doc. No. 44 at 7.) Growers had no way to accurately predict what their labor inputs and costs would be, and as stated above, many growers' reliance on the AEWR final rule may have not been unreasonable until they were given notice by defendants on January 15, 2021 that the award of backpay was being contemplated by this court. On balance, the court finds that the public interest factor weighs strongly in favor of granting equitable restitution. However, the backpay period shall exempt the dates January 1, 2021 to January 14, 2021. *Cf. Frederick Cnty. II*, 968 F.2d at 1274 ("[B]ecause the 1983 regulation was promulgated on the eve of the 1983 harvest and was in effect for only six days in 1983—and the district court exempted these six days from the backpay period—it is clear that the growers are not being required to make restitution in respect of any period during which they reasonably relied upon the 1983 regulation.").

In light of these factors, the court concludes that wages were "obtained in such circumstances that the possessor will give offense to equity and good conscience if permitted to

retain it." *See Frederick County I*, 703 F. Supp. at 1029. To not order wage adjustments under the circumstances presented by this case "would be to give legal effect to the [agency's] invalid order." *Democratic Cent. Comm. of D.C.*, 485 F.2d at 825. Plaintiffs have therefore established that equitable restitution by way of backpay for the days worked between January 15, 2021 and February 23, 2021 is an appropriate remedy that should be granted at this time. Accordingly, the court will grant plaintiffs' motion seeking an extension of the court's previously granted preliminary injunctive relief in the form of equitable restitution.[5]

## CONCLUSION

For the reasons set forth above:

1. Plaintiffs' motion seeking an extension of the court's previously granted preliminary injunctive relief in the form of equitable restitution (Doc. No. 44) is granted;

2. Defendants are directed to notify state workforce agencies, employers, and the public within seven (7) days of this order of the following:

a. H-2A employers who submitted job orders and applications for H-2A labor certification between December 21, 2020 and February 23, 2021 are required to make wage adjustment payments to qualifying H-2A workers and U.S. farmworkers in corresponding employment who worked during the period from January 15, 2021 to February 23, 2021 and received an hourly wage below the geographically applicable 2021 AEWR;

b. Each wage adjustment payment must equal the total number of hours a farmworker worked from January 15, 2021 and February 23, 2021 multiplied by the difference between the wage received and the geographically applicable 2021 AEWR;

---

[5] At the May 11, 2021 hearing, the parties stated that there is nothing more in terms of the record or evidence that the court requires or that would assist the court in rendering a decision on the merits of this action. In light of this acknowledgement, the parties are encouraged to either stipulate to entry of judgment or to otherwise resolve this matter with a request for dismissal as part of that resolution.

c. Those H-2A employers are required to make wage adjustment payments to the qualifying H-2A workers and U.S. farmworkers in corresponding employment within sixty (60) days of defendants having provided the notice required by this order; and

3. Defendants shall require that any H-2A employer with H-2A workers or U.S. farmworkers in corresponding employment during the Interim Period be required to certify compliance with the wage adjustment requirement either as part of its next H-2A application or by other valid and enforceable means.

IT IS SO ORDERED.

Dated:   **May 13, 2021**

_____
UNITED STATES DISTRICT JUDGE