UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED FARM WORKERS, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>THE UNITED STATES DEPARTMENT OF LABOR, et al.,<br><br>Defendants. | No. 1:20-cv-01690-DAD-JLT<br><br>ORDER AMENDING THE COURT'S MAY 14, 2021 ORDER GRANTING PLAINTIFFS' MOTION SEEKING AN EXTENSION OF THE COURT'S PREVIOUSLY GRANTED PRELIMINARY INJUNCTIVE RELIEF IN THE FORM OF EQUITABLE RESTITUTION AND TEMPORARY STAY OF THIS ORDER<br><br>(Doc. Nos. 44, 58, 64) |

On December 23, 2020, the court granted plaintiffs United Farm Workers and UFW Foundation's (collectively, "plaintiffs") motion for a preliminary injunction in this action. (Doc. No. 37.) Therein, the court prohibited defendants United States Department of Labor ("DOL") and the Secretary of Labor (collectively, "defendants") from implementing the final rule published on November 5, 2020, and required defendants to publish 2021 Adverse Effect Wage Rates ("AEWRs") in accordance with the existing regulations. (*Id.* at 39); *see also Adverse Effect Wage Rate Methodology for the Temporary Employment of H-2A Nonimmigrants in Non-Range Occupations in the United States*, 85 Fed. Reg. 70,445 (Nov. 5, 2020). On January 12, 2021, the court issued a supplemental order that, among other things, directed defendants "to provide notice

1

1    to all H-2A employers who submit job orders and applications for H-2A labor certification

2    between December 21, 2020 and the publication of the final 2021 AEWRs" and inform them of

3    the potential of backpay claims.  (*Id.* at 4.)

4        On February 23, 2021, the DOL's Employment and Training Administration issued a

5    notice in the Federal Register announcing the 2021 AEWRs applicable to H-2A workers and

6    workers in corresponding employment performing agricultural labor or services other than the

7    herding or production of livestock on the range.  *Labor Certification Process for the Temporary*

8    *Employment of Aliens in Agriculture in the United States: 2021 Adverse Effect Wage Rates for*

9    *Non-Range Occupations*, 86 Fed. Reg. 10,996 (Feb. 23, 2021).  The AEWRs set forth in that

10   notice were effective immediately.  *Id.*

11       On March 11, 2021, plaintiffs filed a motion seeking wage adjustment payments for

12   qualifying farmworkers.  (Doc. No. 44 at 9.)  Following two hearings, on May 14, 2021, the court

13   granted plaintiffs' motion, which it construed as a motion seeking an extension of the court's

14   previously granted preliminary injunctive relief in the form of equitable restitution.  (Doc. No.

15   58.)  The court directed defendants to notify state workforce agencies, employers, and the public

16   within seven days of the court's order that H-2A employers who submitted job orders and

17   applications for H-2A labor certification between December 21, 2020 and February 23, 2021

18   were required to make wage adjustment payments to qualifying H-2A workers and U.S.

19   farmworkers in corresponding employment who worked during the period from January 15, 2021

20   to February 23, 2021 ("the Interim Period") and received an hourly wage below the

21   geographically applicable 2021 AEWR.  (*Id.* at 13.)  The court also directed defendants to require

22   that any H-2A employer with H-2A workers or U.S. farmworkers in corresponding employment

23   during the Interim Period be required to certify compliance with the wage adjustment requirement

24   either as part of its next H-2A application or by other valid and enforceable means.  (*Id.* at 14.)

25       On June 3, 2021, following three weeks of conferring, the parties filed a joint status report

26   in this action which included two requests for modifications of the court's May 14, 2021 order.

27   (Doc. No. 64.)  On June 8, 2021, the court directed the parties to submit supplemental briefing

28   providing clarification as to a statement made by plaintiffs' counsel in the status report with

regard to one of the requested modifications of the court's order.  (Doc. No. 66.)  On June 10, 2021, plaintiffs and defendants each submitted a supplemental brief addressing that matter.  (Doc. Nos. 67, 68.)

At the outset, the court will adopt defendants' unopposed proposal to amend the May 14, 2021 order with regards to the administrable and enforceable means of ensuring compliance with the required wage adjustment.  (*See* Doc. No. 64 at 3.)  The proposed amendment directs defendants to notify covered employers "that they (1) are responsible for maintaining accurate and adequate earnings records, consistent with 20 CFR 655.122(j), to establish compliance with the equitable restitution obligation specified in the court's order, and (2) must certify compliance with the wage adjustment requirement in a manner determined by the Department."  (*Id.* at 14.)  The court finds this modification to be appropriate and will amend its May 14, 2021 order accordingly.

However, the court has not been persuaded to adopt plaintiffs' proposal to remove from the May 14, 2021 order's clause the limiting language "who submitted job orders and applications for H-2A labor certification between December 21, 2020 and February 23, 2021."  (*See id.* at 3–4.)  Plaintiffs argue that the order as currently worded in this regard is unnecessarily restrictive, because only 1,404 farmworkers will receive wage adjustment payments under the terms of the current order.  (*Id.* at 4; *see also* Doc. No. 64-1 at ¶ 9.)  They assert that their proposed amendment eliminating that limiting language would instead allow 94,223 farmworkers to receive wage adjustment payments and is therefore necessary to effectuate the equitable relief reflected in the court's May 14, 2021 order and discussed during the hearing on plaintiffs' motion seeking that relief.  (Doc. No. 64 at 4–5) (citing Doc. No. 64-1 at ¶ 10.)  Plaintiffs note that the court previously referenced their estimate in moving for such relief that more than 73,200 H-2A workers would receive wage adjustments.  (*Id.* at 5) (citing Doc. No. 58 at 11).

Upon reflection, the court acknowledges an ambiguity within its May 14, 2021 order with regards to which farmworkers would receive backpay under the 2021 AEWR for work they performed during the Interim Period.  The court's order intentionally highlighted the importance of reasonable reliance and notice, and it was always the court's intent to strike a balance by

3

compensating farmworkers at the correct rate where growers had timely notice of that possibility while not imposing an unfair hardship on growers who had no such notice at the time they applied or contracted for H-2A farmworkers. (*See* Doc. No. 58 at 8–9, 11–12.) It was always the court's view that the latter group could not fairly be required to pay backpay with respect to the Interim Period. However, upon reviewing its order, the court acknowledges that this intention was unfortunately only spelled out in the order clause and not in the body of the order. Moreover, sections of the order could be fairly read as suggesting the appropriateness of a broader backpay order. The undersigned apologizes for the confusion caused by that inartful drafting and the uncertainty that has followed.

That being said, the court reaffirms its findings in the May 14, 2021 order. Although some of the order's language can be construed as granting relief to *all* farmworkers after January 15, 2021 on the basis of public notice, this was never the court's intent. Plaintiffs argue that even if the May 14, 2021 order were amended, all employers were notified that the wage freeze was unlawful and that wage adjustment payments may be required. (Doc. No. 64 at 8.) The court disagrees. In keeping with the court's January 12, 2021 order, the DOL's January 15, 2021 notice stated the following:

> Accordingly, the court ordered the Department to provide notice to *all employers who submit job orders and applications under the H-2A program between December 21, 2020, and the publication of 2021 AEWRs in the Federal Register*, that affected H-2A workers may have a potential claim for backpay. Accordingly, and as part of their regulatory obligations to maintain accurate and adequate earnings records (see 20 CFR 655.122(j)), the Department *reminds employers* to record the names and permanent home addresses of all H-2A workers who may later be entitled to backpay, and make reasonable efforts to ensure that such information for each worker remains current.

*See* U.S. Dep't of Labor, *Employment and Training Administration—Announcements* (Jan. 15, 2021), https://www.dol.gov/agencies/eta/foreign-labor/news (last visited June 4, 2021). The notice that the court ordered be provided was directed specifically to employers who submitted job orders and applications within a specific period of time. Defendants correctly assert that plaintiffs' proposed amendment would result in imposing a backpay requirement on over 3,500 additional employers who were not on notice that any backpay order that might issue could apply

4

to them.  (Doc. No. 64 at 11) (citing Doc. No. 64-1 at ¶¶ 9–10).

The court is sympathetic to the concern expressed by plaintiffs' counsel and acknowledges, as it did in its May 14, 2021 order, that every dollar counts for families living at subsistence level.  (*See* Doc. No. 58 at 12) (citing *Paxton v. Sec'y of Health & Human Servs.*, 856 F.2d 1352, 1354 (9th Cir. 1988)).  But the court must also take into consideration the hardships that plaintiffs' proposed amendment would cause growers who were never placed on notice of the potential for a backpay award when they made operating decisions, since those growers cannot now make adjustments to reflect the true cost of labor.  If an employer submitted a job order or H-2A application from December 21, 2021 onward, they knew that the rule had been enjoined.  As the court noted in its May 14, 2021 order, growers before that point had no reason to believe the rule was invalid, even if they knew litigation challenging it had been commenced.  (*See id.* at 8–9.)  In the court's view, the May 14, 2021 order strikes an equitable balance between both these hardships to the best of the court's ability.

However, the court will make a slight modification to the May 14, 2021 order's wording.  Plaintiffs contend that "even if the order were to apply more broadly to all employers that submitted applications during the December 21, 2020, to February 23, 2021 period, recent data published by DOL suggests that 6,464 farmworkers would potentially receive wage adjustment payments" because they worked for an employer that submitted an H-2A application between December 21, 2020, and February 23, 2021, and sought workers for the Interim Period.[1]  (Doc. No. 64 at 5.)  In their supplemental briefing on the issue, plaintiffs clarify that "by simply removing the requirement that employers must have submitted a job order during the relevant period (*in addition* to an H-2A application), the order would still apply to a broader group of farmworkers . . .."  (Doc. No. 67 at 3.)

The court apologizes for this confusion stemming from the language employed in that order as well.  Nonetheless, here again, it was always the court's intention to impose this backpay requirement on employers who submitted *either* job orders *or* H-2A applications under the H-2A

---

[1]  In their supplemental briefing, defendants note the DOL estimates that expanding the order would likely cover approximately 6,568 certified worker positions.  (Doc. No.68 at 2 n.2.)

program between December 21, 2020 and the publication of 2021 AEWRs.  Indeed, the request for supplemental briefing was based upon the court's belief that this intention was clear. Moreover, it appears that those employers who submitted job orders alone, H-2A applications alone, or both a job order and an H-2A application during the period in question did receive actual notice of the potential for a backpay award based upon the 2021 AEWRs.  This is because the court understands that the notice was provided by way of an online posting on defendant's website.  In the undersigned's view, fair notice of the potential for a backpay award was provided by this posting to those employers who submitted job orders, or applications, or both during the prescribed period.[2]  The court intended only to exclude employers from the backpay obligation who had completed either their job orders or their H-2A applications or both prior to December 21, 2020.[3]  Accordingly, the court will now make one final amendment to its order to resolve any arguable ambiguity in this regard.  By extension, the court will also grant defendants' request that compliance with the revised order be required within fourteen (14) days of this order.  (*See* Doc.

---

[2]  On June 10, 2021, just as this order was being prepared for filing on the docket, proposed intervenor National Council of Agricultural Employers filed a motion to intervene and a motion to stay all proceedings in this case pending the court's ruling on the pending motion to intervene. (Doc. Nos. 69, 70.)  Attached to the pending motion to intervene are the declarations of Jason Resnick, Michael Marsh, and Leticia Ridaura.  (Doc. No. 70 at 23–31.)  Although the court has not had an opportunity to thoroughly review the motions, the court has reviewed the attached declarations.  Resnick, Marsh, and Ridaura each state that they are an officer of an organization representing employers who are affected by the wage adjustment requirement.  (*See id.*)  They state that they were "generally aware of the notice DOL published on its website on January 15, 2021, [but] the notice did not state that any employers who filed applications on or before December 20, 2020 would be required to make payment for back pay owed from January 15, 2021 through the publication of the 2021 AEWR on February 23, 2021."  (*Id.* at 24, 27; *see also id.* at 31.)  They further state that their organizations' members relied on that notice and believed they were not required to set aside money for backpay.  (*Id.* at 24–25, 27–28, 31.)  However, the declarations appear to indicate that those employers take issue with plaintiffs' proposal to remove from the May 14, 2021 order's clause the limiting language "who submitted job orders and applications for H-2A labor certification between December 21, 2020 and February 23, 2021." (*See id.* at 24, 27, 29.)  As discussed above, the court is not granting plaintiffs' request to remove that limiting language from the order.  Accordingly, the court does not find that the concerns raised in the Resnick, Marsh, and Ridaura declarations are relevant in considering the adequacy and fairness of the January 15, 2021 notice.

[3]  Indeed, in the court's view this intention was made clear to counsel given the context of the discussion at the hearings and the court's focus on those employers who had already made their labor commitments *before* the court's December 23, 2020 order was issued.

No. 64 at 11.)

For the reasons set forth above, the court amends its May 14, 2021 order (Doc. No. 58) to now provide as follows:

1. Plaintiffs' motion seeking an extension of the court's previously granted preliminary injunctive relief in the form of equitable restitution (Doc. No. 44) is granted;

2. In light of proposed intervenors' pending motion to stay (*see* footnote 2; Doc. No. 69), the court will *sua sponte* grant a limited stay as follows:  Defendants' compliance deadline as set forth in this order immediately below is hereby stayed until the court issues a separate order ruling on the pending motion to intervene and lifts this limited stay (Doc. No. 70);

3. Within fourteen (14) days of the lifting of this limited stay, defendants are directed to notify state workforce agencies, employers, and the public of the following:

    a. H-2A employers who submitted job orders or applications for H-2A labor certification between December 21, 2020 and February 23, 2021 are required to make wage adjustment payments to qualifying H-2A workers and U.S. farmworkers in corresponding employment who worked during the period from January 15, 2021 to February 23, 2021 and received an hourly wage below the geographically applicable 2021 AEWR;

    b. Each wage adjustment payment must equal the total number of hours a farmworker worked from January 15, 2021 and February 23, 2021 multiplied by the difference between the wage received and the geographically applicable 2021 AEWR;

    c. Those H-2A employers are required to make wage adjustment payments to the qualifying H-2A workers and U.S. farmworkers in corresponding employment within sixty (60) days of defendants having provided the notice required by this order;

/////

/////

4. Defendants shall further notify all H-2A employers covered by the court's order that they (1) are responsible for maintaining accurate and adequate earnings records, consistent with 20 CFR 655.122(j), to establish compliance with the equitable restitution obligation specified in the court's order, and (2) must certify compliance with the wage adjustment requirement in a manner determined by the Department of Labor;

5. The undersigned will not consider any additional applications (as opposed to motions for reconsideration) seeking further clarification of the court's orders absent a compelling showing of good cause[4]; and

6. This case is hereby set for a status conference on Tuesday, June 15, 2021 at 2:00 p.m. Pacific Time to discuss how to proceed in light of proposed intervenors' pending motions.  Counsel for all parties, including counsel for the proposed intervenors must appear at that date and time by video.  The undersigned's Courtroom Deputy Jami Thorp (jthorp@caed.uscourts.gov) will email the parties with log-in information before the conference.  In light of the clarifications made in this order to the court's May 14, 2021 order, should the proposed intervenor elect to withdraw the pending motions to stay and intervene prior to the scheduled status conference, that conference will be vacated.

IT IS SO ORDERED.

Dated: **June 11, 2021**

UNITED STATES DISTRICT JUDGE

---

[4] Counsel in this case are well aware of the well-publicized and critical shortage of judicial resources this district has endured unabated for over sixteen months.  As of the end of April 2021, the undersigned's two full caseloads included a total of 1,267 civil cases and over 720 criminal defendants, and those numbers are growing monthly.  This crisis situation is not conducive to the fair administration of justice.  The court is doing the best it can which, as evidenced by some of the discussion above, is not always good enough.  However, and unfortunately, the undersigned simply cannot afford to devote additional time to this matter on a shortened time frame basis given the court's other obligations.