UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED FARM WORKERS, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>THE UNITED STATES DEPARTMENT OF LABOR, et al.,<br><br>Defendants. | No. 1:20-cv-01690-DAD-JLT<br><br>ORDER DENYING PROPOSED INTERVENORS' MOTIONS TO INTERVENE AND TO STAY ALL PROCEEDINGS<br><br>(Doc. Nos. 69, 70) |

This matter comes before the court on the motions to stay this action and intervene filed on June 10, 2021 by the National Council of Agricultural Employers and Western Growers Association (collectively, "proposed intervenors"). (Doc. Nos. 69, 70.) A hearing on the motions was held on June 22, 2021. Attorneys Rachel Jacobson, Mark Selwyn, Derek Woodman, and Trent Taylor appeared by video for plaintiffs United Farm Workers and UFW Foundation (collectively, "plaintiffs"); United States Department of Justice Trial Attorney Michael Gaffney appeared by video for defendants the United States Department of Labor ("DOL") and the Secretary of Labor (collectively, "defendants"), and attorneys Christopher Schulte and Robert Roy appeared by video for proposed intervenors. For the reasons explained below and as stated on the record at the conclusion of the hearing, the motion to intervene is denied and the motion to stay is denied as moot.

1

# BACKGROUND

The factual background of this case was set forth in the court's order granting plaintiffs' motion for a preliminary injunction. (*See* Doc. No. 37.) That background will not be repeated here, but the facts relevant to the disposition of this motion are discussed below.

On December 23, 2020, the court granted plaintiffs' motion for a preliminary injunction in this action, prohibiting defendants from implementing the final rule published on November 5, 2020 and requiring defendants to publish 2021 Adverse Effect Wage Rates ("AEWRs") in accordance with the existing regulations. (*Id.* at 39); *see also Adverse Effect Wage Rate Methodology for the Temporary Employment of H-2A Nonimmigrants in Non-Range Occupations in the United States*, 85 Fed. Reg. 70,445 (Nov. 5, 2020). On January 12, 2021, the court issued a supplemental order directing defendants "to provide notice to all H-2A employers who submit job orders and applications for H-2A labor certification between December 21, 2020 and the publication of the final 2021 AEWRs" and inform them of the potential of backpay claims. (*Id.* at 4.) Defendants issued that court-ordered notice to employers on January 15, 2021. *See* U.S. Dep't of Labor, *Employment and Training Administration—Announcements* (Jan. 15, 2021), https://www.dol.gov/agencies/eta/foreign-labor/news.

On February 23, 2021, the DOL's Employment and Training Administration issued a notice in the Federal Register announcing, as directed by the court, the 2021 AEWRs applicable to H-2A workers and workers in corresponding employment performing agricultural labor or services other than the herding or production of livestock on the range. *Labor Certification Process for the Temporary Employment of Aliens in Agriculture in the United States: 2021 Adverse Effect Wage Rates for Non-Range Occupations*, 86 Fed. Reg. 10,996 (Feb. 23, 2021). The AEWRs set forth in that notice were effective immediately. *Id.*

On March 11, 2021, plaintiffs filed a motion seeking wage adjustment payments for qualifying farmworkers as part of the injunctive relief ordered by the court. (Doc. No. 44 at 9.) Following two hearings, on May 14, 2021, the court granted plaintiffs' motion, which it construed as a motion seeking an extension of the previously granted preliminary injunctive relief to include an equitable restitution component. (Doc. No. 58.) On June 3, 2021, the parties filed a joint

status report which included two requests for modifications of the court's May 14, 2021 order. (Doc. No. 64.) On June 11, 2021, the court issued an order amending and clarifying the scope of its May 14, 2021 order. (Doc. No. 74.)

On June 10, 2021, as the signed order amending the May 14, 2021 order was being prepared for filing on the court's docket, proposed intervenors filed the pending motion to intervene and motion to stay all proceedings in this case pending the court's ruling on their motion to intervene.[1] (Doc. Nos. 69, 70.) On June 18, 2021, plaintiffs filed their oppositions to the motions. (Doc. Nos. 77, 78.) On June 21, 2021, defendants filed their opposition to the motions. (Doc. No. 79.)

## LEGAL STANDARD

Intervention as a matter of right is governed by Federal Rule of Civil Procedure 24(a), which provides that "[o]n timely motion, the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a). A party seeking to intervene as a matter of right must satisfy the following four requirements: (1) the applicant has a significant protectable interest relating to the transaction that is the subject of the suit; (2) the disposition of the action may impair or impede the applicant's ability to protect its interest; (3) the application is timely; and (4) the existing parties may not adequately represent the applicant's interest. *Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173, 1177 (9th Cir. 2011); *United States v. City of Los Angeles*, 288 F.3d 391, 397 (9th Cir.

---

[1] In light of this fact, the court *sua sponte* granted a limited stay of its June 11, 2021 order, staying defendants' compliance deadlines as set forth in that order until the court had ruled on the motion to intervene and lifted the limited stay. (Doc. No. 74 at 7.) The June 11, 2021 order had directed defendants to notify state workforce agencies, employers, and the public within fourteen days of the court's order that H-2A employers who submitted job orders or applications for H-2A labor certification between December 21, 2020 and February 23, 2021 were required to make wage adjustment payments to qualifying H-2A workers and U.S. farmworkers in corresponding employment who worked during the period from January 15, 2021 to February 23, 2021 ("the Interim Period") and received an hourly wage below the geographically applicable 2021 AEWR. (*Id.*)

3

2002). Courts generally construe the rule broadly in favor of applicants who seek to intervene. *Prete v. Bradbury*, 438 F.3d 949, 954 (9th Cir. 2006); *City of Los Angeles*, 288 F.3d at 397. A liberal interpretation of the rule "serves both efficient resolution of issues and broadened access to the courts. By allowing parties with a practical interest in the outcome of a particular case to intervene, we often prevent or simplify future litigation involving related issues[.]" *Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489, 1496 n.8 (9th Cir. 1995) (citations omitted).

Rule 24 also allows for permissive intervention. *See* Fed. R. Civ. P. 24(b)(1)(B) (noting a court may permit a party to intervene who "has a claim or defense that shares with the main action a common question of law or fact"). "[P]ermissive intervention 'requires (1) an independent ground for jurisdiction; (2) a timely motion; and (3) a common question of law and fact between the movant's claim or defense and the main action.'" *Freedom from Religion Found., Inc. v. Geithner*, 644 F.3d 836, 843 (9th Cir. 2011) (internal citations omitted). "Permissive intervention is committed to the broad discretion of the district court . . .." *Orange Cty. v. Air Cal.*, 799 F.2d 535, 539 (9th Cir. 1986).

## ANALYSIS

In their pending motion, the proposed intervenors move to intervene as of right under Federal Rule of Civil Procedure 24(a)(2). (Doc. No. 70 at 2–3.) In the alternative, they seek to intervene permissively under Rule 24(b)(1)(B). (*Id.* at 21–22.) Specifically, proposed intervenors seek to intervene in order to challenge the validity and enforceability of the limited equitable restitution remedy adopted by the court in granting preliminary injunctive relief to plaintiffs. (*Id.* at 6.)

**A.     Intervention as of Right**

Each of the four elements for intervening as a matter of right "must be demonstrated in order to provide a non-party with a right to intervene." *League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1302 (9th Cir. 1997). "Failure to satisfy any one of the requirements is fatal to the application, and we need not reach the remaining elements if one of the elements is not satisfied." *Perry v. Proposition 8 Off. Proponents*, 587 F.3d 947, 950 (9th Cir. 2009).

4

Because the court concludes that proposed intervenors have failed to demonstrate both that defendants are inadequately representing their interests in this action and that the pending motion is also timely, only those two elements of intervention as of right will be addressed below.

*1. Whether the Existing Parties Adequately Represent the Applicant's Interest*

To determine whether existing parties are adequately representing a proposed intervenor's interests, courts consider

> whether (1) the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) the present party is capable and willing to make such arguments; and (3) a proposed intervenor would [not] offer any necessary elements to the proceeding that other parties would neglect.

*Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003) (internal citation and quotation marks omitted). The proposed intervenors' burden of proof is minimal and is satisfied if they can "demonstrate that representation of their interests 'may be' inadequate." *Id.*

The first factor, "how the interest compares with the interests of existing parties," is "[t]he most important factor in determining the adequacy of representation." *Id.* However, there is "a presumption that the government will adequately represent a party's interests." *Low v. Altus Fin. S.A.*, 44 Fed. App'x 282, 284 (9th Cir. 2002).[2] Additionally, "[w]hen an applicant for intervention and an existing party have the same ultimate objective, a presumption of adequacy of representation arises." *Arakaki*, 324 F.3d at 1086. "If the applicant's interest is identical to that of one of the present parties, a compelling showing should be required to demonstrate inadequate representation." *Id.* When the parties "share the same ultimate objective, differences in litigation strategy do not normally justify intervention." *Id.*

Proposed intervenors assert that they do not share the same ultimate objective as defendants because defendants must represent the broad public interest, not just the economic interest of H-2A employers. (Doc. No. 70 at 19) They argue that their interests in (1) potential enforcement of back wage claims, which they alone will bear the burden of paying; (2) other enforcement actions from DOL regarding the court's orders; and (3) the potential adverse

---

[2] Citation to this unpublished Ninth Circuit opinion is appropriate pursuant to Ninth Circuit Rule 36-3(b).

5

precedent the court's order will create, are narrower and more parochial than the interest of the public at large in seeing that laws are applied properly and consistently. (*Id.*) Proposed intervenors contend that they first became aware that their interest would no longer be adequately protected when (1) defendants failed to challenge the May 14, 2021 order, in which the court stated that the parties believed "there is nothing more in terms of the record or evidence that the court requires or that would assist the court in rendering a decision on the merits of this action" and suggested that the parties "stipulate to entry of judgment or to otherwise resolve this matter with a request for dismissal," and (2) on May 18, 2021, when defendants entered a stipulated proposed order evidencing their apparent willingness to craft "proposed revisions to clarify which employers are subject to the Court's order" as well as craft "proposed revisions with respect to the relevant compliance and enforcement mechanisms." (*Id.* at 14.)

The court is not persuaded by proposed intervenors' arguments in this regard. Defendants and proposed intervenors do in fact share the same "ultimate objective" in opposing equitable restitution in the form of wage adjustments. (*See* Doc. No. 79 at 3.) Moreover, as plaintiffs and defendants correctly point out in their oppositions to the pending motion to intervene, the record in this case establishes that defendants have vigorously represented proposed intervenors' interests throughout this litigation. (*See* Doc. Nos. 77 at 11–13; 79 at 3–5.) As defendants recount,

> [i]n their opposition to Plaintiffs' motion for backpay, Defendants disputed Plaintiffs' contention that the 2020 AEWRs were no longer valid as of January 1, 2021. ECF 47 at 2-4. Defendants argued that DOL therefore lacked the authority to retroactively apply the 2021 AEWRs. *Id.* at 4–5. Defendants also argued that the APA did not empower the Court to grant such a remedy. *Id.* at 5–6. Defendants asserted that, even if the Court had the power to issue a backpay award in certain circumstances, the issuance of such an award here would be unprecedented, unsupported by the cases cited by Plaintiffs. *Id.* at 6–10. When Plaintiffs sought to expand the Court's May 14 order, *see* ECF 64 at 2–8, Defendants opposed that request too, *see id.* at 8–10. Specifically, Defendants argued that "[e]xpanding the Court's May 14 order would result in imposing a backpay requirement on thousands of employers"—like those allegedly represented by Proposed Intervenors—"who were not on notice that a backpay order would apply to them." *Id.* at 10.

(Doc. No. 78 at 3.)

Plaintiffs and defendants also accurately assert that defendants have already advanced all of the arguments that proposed intervenors would apparently raise were they allowed to intervene at this late stage of the litigation. Certainly, proposed intervenors have proffered no new or additional arguments that they believe were not advanced by defendants. The motion to intervene and the declarations submitted in support thereof reflect that proposed intervenors merely seek to oppose any expansion of the equitable restitution order because employers' economic expectations and hiring decisions would be upset by such an expanded order.[3] (Doc. No. 70 at 24, 27–28, 30–31) (attesting that each organization's members acted in reliance on defendants' notice that their members were not required to set aside money for wage adjustments). However, that is precisely the argument which counsel for defendants successfully presented in persuading the court to reject plaintiffs' proposed expansion of the equitable restitution remedy the court had imposed. Defendants argued in opposition to plaintiffs' motion for equitable relief that wage-adjustment payments would "disrupt economic expectations and reliance on the rates in effect at the time" to the detriment of H-2A employers, and that "[r]etrospectively increasing [the cost of labor] would put the growers in a difficult position because they are, of course, unable to make adjustments 'to reflect the true cost of labor.'" (Doc. No. 47 at 13.) When counsel for defendants responded at the May 11, 2021 hearing to specific questions posed by the court about how any backpay ordered could be delivered, defense counsel began by reiterating that defendants objected to any equitable restitution involving backpay and made clear that counsel was responding solely within the confines of the court's question. The undersigned specifically noted defense counsel's continued objection on the record.

Again, proposed intervenors do not point to any argument that they would have made beyond those already pressed by defendants in this action over the last seven months plus. Defendants note that proposed intervenors simply theorize that defendants' interests may "not

---

[3] For this reason, plaintiffs also argue in their opposition that the pending motion to intervene has been rendered moot by the court's June 11, 2021 order. (*See* Doc. No. 77 at 6) ("Proposed intervenors' motion to intervene to address plaintiffs' request to expand the Court's May 14 order awarding equitable relief in the form of wage-adjustment payments is now moot. For that reason alone, it should be denied."). However, proposed intervenors now state that they, as defendants did, oppose all aspects of the court's order requiring even very limited wage adjustments.

7

necessarily coincide" with their own and speculate that defendants "may want to find an amicable way out of this litigation" (Doc. No. 70 at 21), but they do not identify any concrete way in which these possibilities have caused defendants to present anything short of a fulsome opposition to the issuance of an equitable remedy, including an order requiring that employers who had notice of the likelihood of such an award before their hiring decisions were finalized provide backpay for the few weeks in 2021 before the new 2021 AEWRs were issued.[4] (Doc. No. 79 at 4.)

In sum, the court finds that defendants have from the outset of this litigation shared proposed intervenors' ultimate objectives. Moreover, defendants and proposed intervenors continue to "share the same ultimate objective," and their "differences in litigation strategy do not [] justify intervention." *Arakaki*, 324 F.3d at 1086. Because proposed intervenors have failed to make the compelling showing required to rebut the presumption that the government defendants have adequately represented their interests in opposing the issuance of an order imposing an equitable restitution remedy involving limited backpay, their motion to intervene as a matter of right will be denied. *See Perry*, 587 F.3d at 952.

/////

/////

---

[4] The court also agrees with defendants that "[p]roposed Intervenors mischaracterize th[e] history" of this case. (*Id.*) Defendants explain that what plaintiffs and defendants ultimately filed on June 3, 2021 was (1) a request by plaintiffs to expand the scope of the court's May 14, 2021 order and (2) a response by defendants in opposition to plaintiff's proposal to significantly expand the equitable relief granted—an argument that the court fully embraced in declining to broaden the equitable restitution remedy to the extent plaintiffs had sought. (*Id.*) (citing Doc. Nos. 64, 74). Defendants refute proposed intervenors' contention that they "again . . . fail[ed] to adequately represent the interest of the Intervenors individually and as a whole class of H-2A employers" in this June 3, 2021 filing, particularly in light of the court ultimately agreeing with defendants in rejecting plaintiffs' request. Indeed, as a result of the June 11, 2021 order amending the May 14, 2021 order, the court's equitable restitution award requires only that a modest number of farmworkers be paid what has now been determined to be the appropriate wage for the work they performed during the Interim Period. The court ultimately rejected plaintiffs' desired scope of equitable restitution and instead found defendants' arguments to be more persuasive on that issue. In striking a balance by compensating farmworkers at the correct rate where growers had timely notice of that possibility, while not imposing an unfair hardship on growers who had no such notice at the time they applied or contracted for H-2A farmworker, the court was persuaded by defendants to grant a significantly narrower equitable restitution award than plaintiffs had sought.

8

### 2. *Whether the Pending Motion is Timely*

The timeliness of a motion to intervene as of right is determined "by the totality of the circumstances facing would-be intervenors, with a focus on three primary factors: (1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay." *Smith v. Los Angeles Unified Sch. Dist.*, 830 F.3d 843, 854 (9th Cir. 2016) (internal citation omitted). "Timeliness is a flexible concept." *Chevron Env't Mgmt. Co. v. Env't Prot. Corp.*, 335 F.R.D. 316, 322 (E.D. Cal. 2020) (quoting *United States v. Alisal Water Corp.*, 370 F.3d 915, 921 (9th Cir. 2004)). "[T]he inquiry is inherently fact-sensitive . . . ." *Id.* In considering the facts, "courts should bear in mind that '[t]he crucial date for assessing the timeliness of a motion to intervene is when proposed intervenors should have been aware that their interests would not be adequately protected by the existing parties." *Smith*, 830 F.3d at 854 (internal citation omitted). The court will consider each of these factor in turn.

#### a. The Stage of the Proceeding at Which an Applicant Seeks to Intervene

"[I]n analyzing the 'stage of the proceedings' factor, the '[m]ere lapse of time alone is not determinative.'" *Id.* (internal citation omitted). "Where a change of circumstances occurs, and that change is the 'major reason' for the motion to intervene, the stage of proceedings factor should be analyzed by reference to the change in circumstances, and not the commencement of the litigation." *Id.* "The crucial date for assessing the timeliness of a motion to intervene is when proposed intervenors should have been aware that their interests would not be adequately protected by the existing parties." *Chevron*, 335 F.R.D. at 322. Because there is a presumption that the government will adequately represent a party's interest, "a party's motion to intervene is timely even when intervention is sought at a late stage in the proceeding, as long as the party seeking intervention files an intervention motion in a timely manner once on notice that the government representation is inadequate." *Low*, 44 Fed. App'x at 284–28.

In this case, proposed intervenors contend that they first became aware that their interest would no longer be adequately protected by defendants between May 14 and May 18, 2021. As described above, it was at that time that proposed intervenors claim that despite the court's rejection of defendants' opposition to any equitable relief being granted under the circumstances

of this case, the defendants should have done something more; though they do not suggest any new arguments that they believe should have been advanced.⁵ In any event, the court has concluded that defendants' interests did not and have not diverged from proposed intervenors' interests in this litigation. There simply was no changed circumstance or change in defendants' position in May of 2021. The change in circumstance, if any, occurred on January 15, 2021, the moment at which proposed intervenors were put on notice of the potential of limited backpay being ordered in this case in the form of equitable restitution where notice to employers of that possibility had been provided. Yet proposed intervenors did not file their motion to intervene until June 10, 2021, several months after the court had ruled substantively on the issues in this litigation, having granted injunctive relief and already made a merits finding regarding the legality of the final rule which is the subject of this litigation. *See League of United Latin American Citizens*, 131 F.3d at 1300–03 ("We believe that the fact that the district court has substantively—and substantially—engaged the issues in this case weighs heavily against allowing intervention as of right under Rule 24(a)(2).")⁶ Furthermore, as the proposed intervenors point out, the court's May 14, 2021 order noted that the parties had acknowledged "that there is nothing more in terms of the record or evidence that the court requires or that would assist the court in rendering a decision on the merits of this action." (Doc. No. 58 at 13 n.5.) In other words, the court's order granting plaintiffs' preliminary injunctive relief and the findings therein were akin to a ruling on summary judgment. In short, after over seven months of litigation, the submission of much briefing and the conducting of several hearings, this litigation was for all intents and

/////

/////

---

⁵ It is unclear to the court just what the proposed intervenors thought defendants should have done at that point. Certainly, proposed intervenors have suggested no new arguments that they believe should have been advanced. Moreover, the court notes that the motion to intervene was not filed until June 10, 2021.

⁶ Here, just as in *League of United Latin American Citizens*, the pending motion to intervene comes after "the [] court and the original parties . . . covered a lot of legal ground together." *Id.*; (*see also* Doc. No. 77 at 7–8) (recounting the stages of litigation in this action).

purposes concluded by the time the motion to intervene was filed.[7]  Thus, the court finds that consideration of the "stage of the proceedings" factor also weighs strongly against the granting of intervention as of right here.[8]

            b.        <u>The Prejudice to Other Parties</u>

The second factor of the timeliness analysis is the prejudice to other parties. *Smith*, 830 F.3d at 854. "[P]rejudice to existing parties is 'the most important consideration in deciding whether a motion for intervention is untimely.'" *Id.* at 857 (internal citation omitted). If the proposed intervenors fail "to intervene 'as soon as [they] know or ha[ve] reason to know that [their] interests might be adversely affected by the outcome of the litigation,'" then "the court must determine 'how much prejudice would result from the would-be intervenor's failure . . . .'" *Chevron*, 335 F.R.D. at 327 (citing *Cal. Dept. of Toxic Substances Control v. Commercial Realty Projects, Inc.*, 309 F.3d 1113, 1120 (9th Cir. 2002); *Smith*, 830 F.3d at 857).

Proposed intervenors argue that only three weeks have passed since they learned that their interests diverged from the interests of defendants. (Doc. No. 70 at 14–15.) As discussed above, however, the court has found that at the very least five months have passed since proposed intervenors should have known their interests might be adversely affected by the outcome of this litigation, because they were put on notice of the potential for an equitable restitution remedy being imposed on January 15, 2021.

The court finds that consideration of this factor also weighs against granting intervention as of right in this case. As plaintiffs explain in their opposition to the pending motion, the

---

[7] Both proposed intervenors' motion and defendants' opposition to the pending motion reference this conclusion from the May 11, 2021 hearing. (*See* Doc. Nos. 70 at 14; 79 at 6.) At the June 22, 2021 hearing on the pending motion, the court asked again, out of an abundance of caution, whether the issues in this case have now been resolved. Plaintiffs' counsel stated that he agreed with that characterization, that there is nothing left to decide in this case, and that this action could conclude. Counsel for defendants expressed agreement with this characterization for the most part but added that the government recently published an agenda indicating that the DOL is planning to undertake a new rulemaking in this context, and that the parties in this case are nonetheless planning to work together to bring this action to a conclusion.

[8] The court notes that on December 10, 2020, it granted the State of California's motion for leave to file an *amicus curiae* brief with respect to plaintiffs' motion for preliminary injunction. (Doc. No. 33.) Proposed intervenors made no such motion at any stage of these proceedings.

11

unreasonableness of proposed intervenors' delay and the substantial prejudice to the parties are underscored by the fact that proposed intervenors simply wish to relitigate issues already decided by this court. (Doc. No. 77 at 9.) Specifically, the proposed intervenors indicate that they wish to challenge the equitable restitution order on the grounds that it violates the DOL's regulations and the APA. (*Id.* at 9 n.7.) These are arguments that defendants have made, including in their opposition to the motion for equitable restitution. (*See generally* Doc. No. 47.) The court has now conclusively addressed whether that remedy is appropriate and its proper scope, issues that the parties initially briefed almost three months ago. (Doc. Nos. 44, 47, 58, 74.) Allowing proposed intervenors to relitigate that issue would obviously result in further delay and briefing, and ultimately prejudice the parties. *Marsh*, 194 F.3d at 1051 (holding intervention would prejudice the parties because "there was a lengthy delay . . . and many substantive and procedural issues had already been settled by the time of the intervention motion"). Plaintiffs argue that the prejudice here is particularly acute because the proposed intervenors waited until the parties had filed their proposed amendments to the court's equitable relief order—as well as supplemental briefs responding to the court's question regarding plaintiffs' proposed amendment—before seeking to intervene. (Doc. No. 77 at 9.) Indeed, before the intervention motion was filed, the court had expressed that it was already "prepared to issue a final order addressing the parties' requests for modification." (*Id.* at 9–10) (citing Doc. No. 66.)

In addition, both plaintiffs and defendants have noted that wage adjustments in this context become more difficult to administer with each passing day. Plaintiffs have emphasized this point throughout this litigation—as well as in the predecessor action against the United States Departure of Agriculture[9]—because migrant farmworkers tend to move throughout the year.

---

[9] As noted in plaintiffs' motion seeking an extension of the court's previously granted preliminary injunctive relief in the form of equitable restitution, this point was made at the October 20, 2020 hearing on the motion for a temporary restraining order in *United Farm Workers v. Perdue*, No. 1:20-cv-1452-DAD-JLT. (*See* Doc. No. 44 n.3) ("[T]he plaintiffs, the make-up of that population is such, you know, migrant, non-migrant farmworkers. They travel, they sometimes, but not always, end up at the same locations . . .. [T]his is a population that is not easily traceable or you can't go back and say, 'Hey, by the way, we underpaid you by $500 last year. Where do you want us to send the check?' It's not that easy.").

Additionally, defense counsel noted at the May 11, 2021 hearing that the DOL would prefer the issuance of an order sooner rather than later if the court were to issue an order including equitable restitution in the form of backpay. Defendants argued that the plaintiffs' request for relief is multi-faceted and particularly problematic from an implementation standpoint, especially if the relief granted conditioned future participation in the program on the requirement that employers prove that they made all effort to remit back pay as ordered. Defense counsel also noted that if the court were to direct the growers to issue equitable restitution, that relief would only become more challenging if it were to be ordered later on in 2021. For these reasons, the court concludes that consideration of this factor weighs in favor of finding that the motion to intervene was not timely filed.

                c.        <u>The Reason for and Length of the Delay</u>

The final factor in determining the timeliness of a motion to intervene is the reason for the length of the intervenor's delay. *See Smith*, 830 F.3d at 854. Here, too, the court finds that consideration of this factor weighs against the granting of the pending motion to intervene. The court has already rejected proposed intervenors' sole argument that there was no delay on their part because "this is the first practical time [they] could have joined this case." (Doc. No. 70 at 15.) As defendants now accurately observe: "Proposed Intervenors explain why they are intervening for the narrow purpose of opposing a backpay award, as opposed to intervening to defend the underlying rule . . . But they do not provide any compelling reason for why they waited so long to participate in this stage of the litigation." (Doc. No. 79 at 5.)

Because proposed intervenors have failed to demonstrate that their motion to intervene has been timely brought, the motion to intervene as of right will be denied for that reason as well.

**B.    Permissive Intervention**

In the alternative, proposed intervenors move for permissive intervention. (Doc. No. 70 at 21–22.) "[P]ermissive intervention 'requires (1) an independent ground for jurisdiction; (2) a timely motion; and (3) a common question of law and fact between the movant's claim or defense and the main action.'" *Geithner*, 644 F.3d at 843 (internal citations omitted). To determine timeliness in the permissive intervention context, the court relies on the same three factors used to

13

determine timeliness in the intervention as of right context: the stage of the proceedings, the prejudice to existing parties, and the length of and reason for the delay. *Wilson*, 131 F.3d at 1308. In the permissive intervention analysis, however, the timeliness element is assessed more strictly than in the intervention as of right analysis. *Id.*

As discussed above in addressing the motion for intervention as of right, the court finds the pending motion to be untimely. This conclusion is controlling, and thus permissive intervention must also be denied on that ground. *See id.* ("*A fortiori*, our previous conclusion that [intervenor's] intervention motion was untimely is controlling.").

Because proposed intervenors' motion to intervene will be denied, by extension, their motion to stay all proceedings will be denied as having been rendered moot by this order.[10]

**CONCLUSION**

For the reasons set forth above:

1. Proposed intervenors' motion to intervene (Doc. No. 70) is denied in its entirety;
2. Proposed intervenors' motion to stay (Doc. No. 69) is denied as having been rendered moot by this order; and
3. The limited stay imposed by the court's June 11, 2021 order (Doc. No. 74) is lifted.

IT IS SO ORDERED.

Dated: **June 22, 2021**

_____
UNITED STATES DISTRICT JUDGE

---

[10] (*See* Doc. No. 69 at 1–2) (explaining that the proposed intervenors "move under Federal Rules of Civil Procedure 6(b) and the Court's inherent authority to manage its docket to stay all proceedings in this case pending the Court's ruling on Proposed Intervenors' Joint Motion to Intervene.").

14