UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED FARM WORKERS, et al., | No. 1:20-cv-01690-DAD-BAK |
| Plaintiffs, | |
| v. | ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT |
| THE UNITED STATES DEPARTMENT OF LABOR, et al., | (Doc. No. 90) |
| Defendants. | |

This matter is before the court on the motion for summary judgment filed by plaintiffs United Farm Workers and UFW Foundation on January 5, 2022. (Doc. No. 90.) Pursuant to General Order No. 617 addressing the public health emergency posed by the COVID-19 pandemic, plaintiffs' motion was taken under submission on the papers. (Doc. No. 91.) For the reasons explained below, the court will grant plaintiffs' motion.

**BACKGROUND**

The administrative and factual record for this case is extensive and has been addressed at length in the court's previous orders. (*See* Doc. Nos. 37, 58.) Nonetheless, for purposes of addressing plaintiffs' pending motion for summary judgment, the court briefly summarizes the relevant factual background below.

/////

1

On November 5, 2020, the Department of Labor ("DOL") promulgated a Final Rule that amended the regulations governing the Adverse Effect Wage Rate ("AEWR") calculation methodology. *Adverse Effect Wage Rate Methodology for the Temporary Employment of H-2A Nonimmigrants in Non-Range Occupations in the United States*, 85 Fed. Reg. 70,445 (Nov. 5, 2020) ("the Final Rule" or "the 2020 Rule"). On November 30, 2020, plaintiffs filed their complaint and a motion for a preliminary injunction, asking the court to enjoin the DOL from implementing the Final Rule. (Doc. No. 1.) On December 23, 2020, the court entered a preliminary injunction that prevented the DOL from implementing the 2020 Rule and required the DOL to set the 2021 AEWRs using the methodology set forth in the prior rule. (Doc. No. 37); *see also Temporary Agricultural Employment of H-2A Aliens in the United States*, 75 Fed. Reg. 6,884 (Feb. 12, 2010) ("2010 Rule"). In its order, the court concluded that plaintiffs were likely to prevail on the merits of their claims that (1) the Final Rule is arbitrary and capricious and that (2) the DOL failed to comply with the notice-and-comment rulemaking requirements in issuing the Final Rule. (Doc. No. 37 at 9–27.) The preliminary injunction issued by the court in December 2020 remains in effect.

In compliance with the court's preliminary injunction order, on February 23, 2021, the DOL published the 2021 AEWRs under the methodology provided in the 2010 Rule. *See Labor Certification Process for the Temporary Employment of Aliens in Agriculture in the United States: 2021 Adverse Effect Wage Rates for Non-Range Occupations*, 86 Fed. Reg. 10,996 (Feb. 23, 2021). The Farm Labor Survey ("FLS") data on which the DOL relied found a five percent increase in the annual average gross wage for field and livestock workers (combined), from $13.99 to $14.62. USDA Nat'l Agric. Stat. Serv., *Farm Labor* at 2 (Feb. 22, 2021), https://perma.cc/FFM2-S3E2. On December 15, 2021, the DOL published the 2022 AEWRs, again using the most recent FLS data. *See Labor Certification Process for the Temporary Employment of Foreign Workers in Agriculture in the United States: Adverse Effect Wage Rated for Non-Range Occupations in 2022*, 86 Fed. Reg. 71,282 (Dec. 15, 2021). The latest FLS data revealed a six percent increase in the annual average gross wage for field and livestock workers

/////

2

(combined), from $14.62 to $15.56.  USDA Nat'l Agric. Stat. Serv., *Farm Labor* at 1 (Nov. 24, 2021), https://perma.cc/7LRA-7XBW.

On August 24, 2021, the DOL transmitted to the Office of Management and Budget's Office of Information and Regulatory Affairs a draft Notice of Proposed Rulemaking ("2021 NPRM").  *Adverse Effect Wage Rate Methodology for the Temporary Employment of H-2A Nonimmigrants in Non-Range Occupations in the United States*, Pending EO 12866 Regulatory Review (Aug. 24, 2021), https://www.reginfo.gov/public/do/eoDetails?rrid=191913.  On December 1, 2021, the DOL published the 2021 NPRM.  86 Fed. Reg. 68,174.  The 2021 NPRM recognizes the need for a new rulemaking in light of the court's orders and the DOL's recognition that continuing to rely on FLS data "will better enable the Department to meet its statutory obligation regarding adverse effect."  *Id.* at 68,177–78.  Specifically, the DOL determined that two major aspects of the 2020 Rule "do not adequately protect against adverse impact:  (1) The imposition of a 2-year wage freeze for field and livestock workers at a wage level based on the FLS survey published in November 2019, and (2) the use of the BLS ECI, Wages and Salaries, to annually adjust AEWRs for field and livestock workers annually thereafter."  *Id.* at 68,178.  The DOL stated that these "policy decisions represent a significant departure from how minimum or prevailing wage determinations are issued to employers in other employment-based visa programs administered by the Department, and from how the Department has established the AEWR in the H-2A program for more than 30 years."  *Id.*  Because the DOL "considers actual, current wage data to be the best source of information for determining prevailing wages, when an appropriate source is available," "[u]sing a methodology other than actual, current wage data increases the likelihood of permitting employers to pay wages that are not reflective of market wages, which undermines the Department's mandate to prevent an adverse effect on the wages of workers in the United States similarly employed."  *Id.*  Consistent with those statements, the 2021 NPRM proposes to use the FLS to establish AEWRs for most H-2A jobs, while using Occupational Employment and Wage Statistics ("OEWS") data for occupations where FLS data is unavailable.  *Id.*  The 2021 NPRM also recognizes that employers must pay the wage for the highest-paid occupation performed by an H-2A worker when their role covers multiple

3

occupation classifications. *Id.* at 68,179; *see also id.* at 68,183–84. The public comment period for this new rule closed on January 31, 2022. *Id.* at 68,175. The DOL states that it is now in the process of reviewing the public comments and publishing a final rule. (Doc. No. 95 at 8.)

On January 5, 2022, plaintiffs filed a motion for summary judgment in this action, in which they ask the court to vacate and remand the Final Rule, "which both this Court, and DOL through the 2021 NPRM, have recognized is legally flawed." (Doc. No. 90 at 6.) On January 31, 2022, defendants filed their opposition to plaintiffs' pending motion, in which they "respectfully request that the Court permit DOL's rulemaking process to conclude before adjudicating Plaintiffs' summary judgment motion." (Doc. No. 95 at 5.) According to defendants, "[h]olding Plaintiffs' motion in abeyance will cause no harm to Plaintiffs." (*Id.*) On February 8, 2022, plaintiffs filed their reply. (Doc. No. 96.)

**LEGAL STANDARD**

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

In summary judgment practice, the moving party "initially bears the burden of proving the absence of a genuine issue of material fact." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B). When the non-moving party bears the burden of proof at trial, as plaintiff does here, "the moving party need only prove that there is an absence of evidence to support the non-moving party's case." *Oracle Corp.*, 627 F.3d at 387 (citing *Celotex*, 477 U.S. at 325); *see also* Fed. R. Civ. P. 56(c)(1)(B). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing

sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *See Celotex*, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322–23. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment . . . is satisfied." *Id.* at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In attempting to establish the existence of a factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits or admissible discovery material in support of its contention that the dispute exists. *See* Fed. R. Civ. P. 56(c)(1); *Matsushita*, 475 U.S. at 586 n.11; *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002) ("A trial court can only consider admissible evidence in ruling on a motion for summary judgment."). The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). The opposing party also must demonstrate the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the non-moving party. *See Anderson*, 477 U.S. at 250; *Wool v. Tandem Computs. Inc.*, 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv.*, 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita*, 475 U.S. at 587 (citations omitted).

/////

"In evaluating the evidence to determine whether there is a genuine issue of fact," the court draws "all inferences supported by the evidence in favor of the non-moving party." *Walls v. Cent. Contra Costa Cnty. Transit Auth.*, 653 F.3d 963, 966 (9th Cir. 2011). It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *See Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . [w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted).

## ANALYSIS

As addressed in the court's previous orders, this case concerns alleged violations of the Administrative Procedure Act ("APA"). (Doc. No. 1.) "The APA sets forth the procedures by which federal agencies are accountable to the public and their actions subject to review by the courts." *Dep't of Homeland Sec. v. Regents of Univ. of Cal.*, __U.S.__, 140 S. Ct. 1891, 1905 (2020) (internal quotation marks and citation omitted). Only "final agency actions are reviewable under the APA." 5 U.S.C. § 704; *see also* 5 U.S.C. § 701 (for purposes of the APA's judicial review provisions, "agency action" has "the meaning[] given" by § 551). An "'agency action' includes the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 551(13). Under § 706 of the APA, the court is "to assess only whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgement." *Regents*, 140 S. Ct. at 1905 (internal quotation marks and citation omitted).

The APA "requires agencies to engage in reasoned decisionmaking, and directs that agency actions be set aside if they are arbitrary and capricious." *Id.* (internal citations and quotation marks omitted). An agency's "determination in an area involving a 'high level of technical expertise'" is to be afforded deference. *The Lands Council v. McNair*, 537 F.3d 981, 993 (9th Cir. 2008) (*en banc*) (citing 5 U.S.C. § 706(2)(A)). The district court's role "is simply to ensure that the [agency] made 'no clear error of judgment' that would render its action 'arbitrary

6

and capricious.'" *Id.* citing (*Marsh v. Or. Nat. Res. Council*, 490 U.S. 360, 378 (1989)). "Factual determinations must be supported by substantial evidence," and "[t]he arbitrary and capricious standard requires 'a rational connection between facts found and conclusions made.'" *League of Wilderness Defs./Blue Mountains Biodiversity Project v. Connaughton*, 752 F.3d 755, 759–60 (9th Cir. 2014) (internal citations omitted). This requires the court to ensure that the agency has not, for instance:

> "relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or [an explanation that] is so implausible that it could not be ascribed to a difference in view or the product of agency expertise."

*McNair*, 537 F.3d at 993 (quoting *Motor Vehicle Mfrs. Assn., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).

When a court finds an agency's decision unlawful under the APA, vacatur is the standard remedy. *See* 5 U.S.C. § 706(2)(A) ("The reviewing court shall . . . set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]"); *E. Bay Sanctuary Covenant v. Garland*, 994 F.3d 962, 987 (9th Cir. 2020) ("Because the Rule is 'not in accordance' with 8 U.S.C. § 1158, our obligation as a reviewing court is to vacate the unlawful agency action."); *Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1405 (9th Cir. 1995) ("Ordinarily when a regulation is not promulgated in compliance with the APA, the regulation is invalid."). The Ninth Circuit, however, does not mandate vacatur. *Cal. Communities Against Toxics v. U.S. Envtl. Prot. Agency*, 688 F.3d 989, 992 (9th Cir. 2012) ("A flawed rule need not be vacated."). Indeed, "[w]hen equity demands, [a flawed action] can be left in place while the agency follows the necessary procedures to correct its action." *Id.* (quoting *Idaho Farm*, 58 F.3d at 1405 (internal quotation marks omitted)). Nevertheless, the Ninth Circuit has instructed that vacatur of unlawful agency action is to be declined only in rare circumstances. *See Humane Soc'y v. Locke*, 626 F.3d 1040, 1053 n.7 (9th Cir. 2010) ("In rare circumstances, when we deem it advisable that the agency action remain in force until the action can be reconsidered or replaced, we will remand

7

without vacating the agency's action."); *Ctr. for Food Safety v. Vilsack*, 734 F. Supp. 2d 948, 951 (N.D. Cal. 2010) ("[T]he Ninth Circuit has only found remand without vacatur warranted by equity concerns in limited circumstances, namely serious irreparable environmental injury.").

**A.     Plaintiffs' Motion for Summary Judgment**

In their pending motion for summary judgment, plaintiffs argue the following: (1) The Final Rule contravenes the Immigration and Nationality Act ("INA") by failing to protect U.S. workers against adverse effects to their wages and working conditions; (2) the Final Rule failed to offer a reasoned explanation for the wage freeze; and (3) the Final Rule failed to adhere to notice-and-comment requirements. (Doc. No. 90 at 8–10.) Moreover, plaintiffs argue that this court has already considered these arguments in ruling upon their motion for preliminary injunction and found them to be persuasive. (*Id.*) Accordingly, plaintiffs contend that "[b]ecause the Final Rule and the relevant agency record remains unchanged, the same conclusions are warranted on summary judgment." (*Id.* at 10.) Plaintiffs request that the court now declare the Final Rule arbitrary, capricious, and unlawful. (*Id.* at 12.) They further request that the court "vacate it on that basis, with remand to the agency for further rulemaking proceedings consistent with the Court's order and the 2021 NPRM." (*Id.*)

In their opposition to the pending motion for summary judgment, defendants "respectfully rely on their prior briefing in opposition to Plaintiffs' motion for a preliminary injunction" with regard to any arguments they may have as to the merits of plaintiffs' motion. (Doc. No. 95 at 10.) Rather than re-litigate the merits, defendants "request that the Court permit DOL's rulemaking process to conclude before adjudicating Plaintiffs' summary judgment motion." (*Id.* at 5.) Specifically, defendants assert as follows:

> Holding Plaintiffs' motion in abeyance will cause no harm to Plaintiffs. The 2022 AEWRs have already been published. In accordance with the Court's preliminary injunction and as required by DOL's 2010 AEWR rule, the 2022 rates were set using the latest FLS data . . . . These 2022 AEWRs will remain in effect through the end of 2022. If DOL has not published the new final rule by that time, DOL will again utilize the latest annual FLS data in publishing the 2023 AEWRs. The methodology set forth in the 2020 rule that is the subject of this litigation—including the two-year wage freeze—–will play no part.

8

(*Id.*)

In their reply, plaintiffs argue that the cases cited by defendants in support of their request to hold this case in abeyance are not applicable here. (Doc. No. 96. At 2.) Specifically, plaintiffs point out that none of those decisions dealt with a situation where the court had already enjoined the offending regulation—as is the case here. (*Id.*) Plaintiffs contend that this case is unique because it involves a situation where "plaintiffs do not agree that a stay would be appropriate, the Court has already enjoined the rule based on Plaintiffs' likelihood of success on the merits, and the requested—and final—relief could be granted with minimal additional effort." (*Id.* at 3.) As such, plaintiffs oppose staying this case and seek an order granting their motion for summary judgment on the merits.

The parties do not appear to dispute that the court has already addressed the merits of this case in its previous order granting plaintiffs' motion for a preliminary injunction. Accordingly, the court will only address their arguments as to whether this case should now be held in abeyance.

### 1. Whether to Hold This Case in Abeyance

In deciding whether to stay proceedings, a district court must weigh various competing interests, including: (1) the possible damage which may result from the granting of a stay; (2) the hardship or inequity which a party may suffer in being required to go forward; and (3) "the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005) (quoting *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962)).

In their opposition brief[1], defendants contend that consideration of all three of these interests weighs in support of granting their request to hold this case in abeyance. First, defendants argue that plaintiffs will not be harmed if the court holds their pending motion in

---

[1] In their initial motion for summary judgment, plaintiffs did not address whether this case should be held in abeyance. (*See* Doc. No. 90.) Accordingly, the court addresses only defendants' opposition brief and plaintiffs' reply in this regard.

abeyance because the 2020 Rule will remain enjoined. (Doc. No. 95 at 9.) As such, defendants contend that plaintiffs "face no risk that the 2020 Rule will injure them or their members if the Court defers ruling on their motion and allows DOL to complete the rulemaking process." (*Id.*) Second, defendants argue that holding the pending motion in abeyance will conserve government resources. (*Id.*) According to defendants, a stay will enable the DOL to focus on promptly reviewing public comments and publishing the final rule, while continued litigation of this action risks slowing that effort. (*Id.*) Moreover, defendants assert that "[v]acatur of the 2020 Rule in the midst of DOL's rulemaking to replace that same rule could cause further confusion." (*Id.* at 9–10.) Third, and finally, defendants contend that deferring ruling on the pending motion will promote judicial economy by allowing the DOL to reconsider the 2020 Rule "without further expenditure of judicial resources." (*Id.* at 10.) As defendants put it, "[e]xpending the Court's resources at this juncture makes little practical sense" because "[i]f the final rule is codified as proposed, Plaintiffs' claims will be moot." (*Id.*)

In their reply brief, plaintiffs first argue that it makes little sense to allow the 2020 Rule to remain in place "when DOL and this Court have already recognized that it fails to protect farmworkers from adverse effects. . . , particularly since this Court has preliminarily addressed the merits of the 2020 Rule and those conclusions are not being challenged." (Doc. No. 96 at 3–4.) Second, plaintiffs contend that defendants "fail to demonstrate that they would be burdened or otherwise harmed absent a stay," asserting that "[d]efendants do not explain how or why an order deciding (and granting) Plaintiffs' motion will burden DOL." (*Id.* at 4.) Third, plaintiffs argue that vacating the 2020 Rule would not cause any confusion—as defendants contend—because "a final order vacating the rule would provide certainty and finality to DOL and regulated entities. Moreover, a vacatur would not impose any additional burdens on DOL with respect to issuing and enforcing AEWRs because . . . DOL is already operating under the 2010 Rule." (*Id.* at 4–5.) Fourth, plaintiffs argue that holding this case in abeyance would in fact waste judicial resources, rather than promote judicial economy as defendants allege. (*Id.* at 5.) Specifically, plaintiffs note that if DOL's forthcoming rule is challenged in court, the 2020 Rule would likely become effective, which could result in a new lawsuit again challenging the 2020 Rule. (*Id.*) Moreover,

plaintiffs point out that any future motion to dismiss on mootness grounds would require the expenditure of additional judicial resources, no matter how minimal. (*Id.*) Lastly, plaintiffs conclude that to resolve their pending motion, "the Court need only reaffirm its earlier conclusions, which Defendants' arguments (or lack thereof) do nothing to alter." (*Id.*)

The court finds plaintiffs' arguments to be persuasive. In short, the court concludes that defendants have not advanced any persuasive argument as to why holding this case in abeyance would better serve the "orderly course of justice." *Lockyer*, 398 F.3d at 1110. Defendants have failed to demonstrate how they would be burdened or harmed absent a stay, instead merely asserting in conclusory fashion that such would be the case. Plaintiffs' argument that it makes little sense for the 2020 Rule to remain in place when the court has already recognized that the Rule "fails to protect farmworkers from adverse effects" is particularly persuasive. (Doc. No. 96 at 3.) Although the court recognizes that the risk of harm to plaintiffs from a stay may be somewhat slight given the 2021 NPRM to replace the 2020 Rule, there still remains at least *some* risk that the 2020 Rule will again become operative so long as it remains subject only to the preliminary injunction issued by this court. (*Id.*) Thus, plaintiffs could potentially suffer harm from the holding of this case in abeyance. On the other hand, the court can identify no risk of harm at all to defendants from an order vacating the 2020 Rule and closing this case. Lastly, the court can conceive of no better way to preserve judicial resources than to bring this case to a conclusion. The court will now briefly turn to the merits of plaintiffs' motion for summary judgment.

2. The Merits of Plaintiffs' Motion for Summary Judgment

In its prior order granting plaintiffs' motion for a preliminary injunction, the court addressed at length how the 2020 Rule is likely unlawful. (*See* Doc. No. 37.) Now, the court confirms and makes that conclusion final. Notably, defendants do not appear to dispute the court's prior analysis, instead relying only on the prior arguments they advanced, which the court previously found to be unpersuasive. (*See* Doc. No. 95 at 10) ("If the Court nonetheless proceeds to adjudicate Plaintiffs' motion, Defendants respectfully rely on their prior briefing in opposition

/////

11

to Plaintiffs' motion for a preliminary injunction."). Therefore, the court will briefly summarize and adopt as final its prior analysis below.

### a. *The 2020 Rule Contravenes Federal Law*

In its previous order, the court first determined that "plaintiffs have established that they are likely to prevail on their claim that the Final Rule is arbitrary and capricious" because it contravenes federal law by failing to protect United States workers against adverse effects. (Doc. No. 37 at 9, 15.) The court now adopts the same reasoning applied in that order and concludes that the Final Rule is arbitrary and capricious because it contravenes the Immigration and Nationality Act ("INA") by failing to protect United States workers against adverse effects to their wages and working conditions.

### b. *The DOL Failed to Offer a Reasoned Explanation in the 2020 Rule*

In its order granting plaintiffs' motion for a preliminary injunction, the court next determined that the Final Rule is arbitrary and capricious because the DOL failed to offer a reasoned explanation in the Final Rule. (*Id.* at 15.) In particular, the court concluded that plaintiffs had demonstrated they were likely to prevail because: (1) "defendants have failed to explain the decision to freeze H-2A wages below market rates for two years" and (2) defendants failed to properly analyze the harm to U.S. farmworkers. (*Id.* at 15–21.) Again, the court now adopts the same reasoning and concludes that the Final Rule is arbitrary and capricious because the DOL failed to offer a reasoned explanation in the Final Rule for its imposition of a two-year wage freeze and failed to analyze the economic effects of the new AEWR methodology on U.S. workers.

### c. *The 2020 Rule Violates the APA's Notice-and-Comment Requirement*

Finally, in its previous order, the court determined that plaintiffs were likely to succeed on their claim that the Final Rule violates the APA's notice-and-comment requirement. (*Id.* at 23–27.) This same conclusion is warranted now as the court addresses the merits of this claim on summary judgment. Accordingly, the court adopts the reasoning from its prior order and concludes that the DOL failed to comply with notice-and-comment rulemaking requirements in issuing the Final Rule, thus rendering it unlawful.

1    As explained above, if a reviewing court concludes that a rule is unlawful, vacatur and remand is the standard remedy that, absent rare circumstances not present here, should be imposed. *See E. Bay Sanctuary Covenant*, 994 F.3d at 987.

For the reasons explained above and in the court's previous orders addressing plaintiffs' motion for preliminary injunction, plaintiffs' motion for summary judgment will be granted and defendants' request to stay this case will be denied.

**CONCLUSION**

Accordingly,

1. Plaintiffs' motion for summary judgment (Doc. No. 90) is granted;
2. The Final Rule is vacated and remanded to the DOL for further rulemaking consistent with this order; and
3. The Clerk of the Court is directed to close this case.

IT IS SO ORDERED.

Dated:   **April 1, 2022**                                                   _____
                                                                             UNITED STATES DISTRICT JUDGE